*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

　　　　　*Plaintiff-Appellee,*

　　　*v.*

CHARLES J. JACKSON,

　　　　　*Defendant-Appellant.*

No. 05-6014

>

─────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 02-00072—R. Leon Jordan, District Judge.

Argued: December 5, 2006

Decided and Filed: January 12, 2007

Before: MOORE and CLAY, Circuit Judges; BELL, Chief District Judge.[*]

─────────────────

## COUNSEL

**ARGUED:** J. Russell Pryor, Greenville, Tennessee, for Appellant. James T. Brooks, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** J. Russell Pryor, Greenville, Tennessee, for Appellant. James T. Brooks, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

─────────────────

## OPINION

─────────────────

KAREN NELSON MOORE, Circuit Judge. Defendant Charles Jackson ("Jackson") appeals his conviction on one count of distribution and possession with intent to distribute more than five grams of crack cocaine. He argues that he is entitled to a new trial because the government violated the Speedy Trial Act and the Sixth Amendment by prejudicially delaying his trial, because the trial court erred in admitting prejudicial evidence related to his Virginia state drug conviction (though not the fact of the conviction itself), because the evidence presented at trial was insufficient to support his conviction, and because the prosecutor improperly vouched for the truthfulness of government witnesses. For the reasons set forth below, we **AFFIRM** Jackson's conviction.

─────────────

[*] The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

1

# I. BACKGROUND

This case arises from the government's investigation of an interstate drug-distribution organization headed by Vernon McCallum ("McCallum"). McCallum purchased powder cocaine in New York, converted it to crack, and then shipped it to eastern Tennessee hidden inside of the vaginas of female employees, known as "mules." McCallum or one of his other employees met the mules in Tennessee, took delivery of the crack, and distributed it to street-level dealers. According to the government, Jackson was one of those dealers from June 1999 until January 2000.

On July 23, 2002, a grand jury handed down a twenty-four-count sealed indictment against Jackson and his alleged co-conspirators. Jackson was indicted on two counts of conspiracy to distribute and possess with the intent to distribute crack cocaine, in quantities of fifty grams or more (Count 1) and five grams or more (Count 2). On the date of the indictment, Jackson was incarcerated in a Virginia prison, serving a drug sentence imposed by a Virginia state court. The United States never filed a detainer with the Commonwealth of Virginia. The indictment was unsealed on June 23, 2003, eleven months after its issuance. Jackson was arrested on May 11, 2004.[1]

One month after his arrest, Jackson moved to dismiss the charges against him on the ground that the unreasonable delay between his indictment and his arrest violated his rights under the Speedy Trial Act (the "Act"), 18 U.S.C. § 3161(j), and the Speedy Trial Clause of the Sixth Amendment to the United States Constitution. The motion was referred to a magistrate judge, who found that "there is no escaping the conclusion that the government violated the [Speedy Trial Act]" but that "dismissal of the indictment is not an appropriate remedy" for that violation. J.A. at 64-65 (Mag. J. Report & Recommendation ("R&R") at 2-3). The magistrate judge further found that the delay did not violate the Sixth Amendment because it "was not motivated by any ulterior, sinister motive" and did not prejudice Jackson's defense. J.A. at 67-69 (R & R at 5-7). The magistrate judge therefore recommended that the district court deny the motion to dismiss. The district court subsequently adopted that recommendation and denied the motion.

On November 19, 2004, after a three-day trial, a jury convicted Jackson of conspiring to distribute and possess five or more grams of crack (Count 2) but acquitted him of conspiring to distribute and possess more than fifty grams (Count 1). Jackson now appeals his conviction, arguing that the prejudicial delay of his trial violated the Speedy Trial Act and the Sixth Amendment, mandating dismissal of the indictment; that the trial court erred in admitting prejudicial evidence related to his drug dealing (though not the fact of his prior state conviction arising from that activity); that the evidence presented at trial was insufficient to support his conviction; and that the prosecutor improperly vouched for the truthfulness of the government's witnesses during closing arguments.

# II. THE SPEEDY TRIAL ACT

Jackson argues that the delays of twenty-two months between his indictment and arrest and of ten months between the unsealing of the indictment and his arrest violated his rights under 18 U.S.C. § 3161(j) and, therefore, that the district court should have exercised its discretion under Federal Rule of Criminal Procedure 48(b) to dismiss the charges against him. The United States concedes, and both the magistrate judge and the district judge found, that the delay violated § 3161(j). The district court declined, however, to dismiss the indictment, finding that dismissal is not an appropriate remedy for a § 3161(j) violation and that an application of the four-factor test set

---

[1] At the time of his arrest and initial appearance, Jackson was still incarcerated in Virginia. He appeared before the magistrate judge on a writ of habeas corpus ad prosequendum.

forth by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), demonstrates that dismissal, even if available, would be inappropriate in this case.

We have previously held that "dismissal of the indictment is not an appropriate remedy for a violation of § 3161(j)." *United States v. Robinson*, 455 F.3d 602, 606 (6th Cir. 2006). Jackson attempts to circumvent *Robinson* by implying that dismissal somehow becomes available at the confluence of § 3161(j) and Rule 48(b). He provides, however, no authority in support of his contention that the district court's discretionary authority empowered it to overrule *Robinson*. Accordingly, we **AFFIRM** the denial of Jackson's motion to dismiss pursuant to the Speedy Trial Act.

## III. THE SIXTH AMENDMENT

Jackson also moved to dismiss on the ground that the delays between the issuance and unsealing of the indictment and his trial violated the Speedy Trial Clause of the Sixth Amendment. The district court's order did not expressly address the Sixth Amendment claim, but the magistrate judge rejected that claim after a consideration of all four *Barker* factors. "In determining whether a defendant's [Sixth Amendment] right to a speedy trial has been violated, this court reviews questions of law *de novo* and questions of fact under the clearly erroneous standard." *Robinson*, 455 F.3d at 607. The remedy for a Sixth Amendment speedy trial violation is dismissal with prejudice. *United States v. Bilsky*, 664 F.2d 613, 617 (6th Cir. 1981).

*Barker* requires us to consider four factors in evaluating a Sixth Amendment speedy-trial claim: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530.

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time.

*Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (internal citations omitted).

The length-of-delay, or "presumptive-prejudice," prong of the *Barker* test is, thus, a threshold issue. *United States v. Mundt*, 29 F.3d 233, 235 (6th Cir. 1994); *see also Danks v. Davis*, 355 F.3d 1005, 1008-09 (7th Cir.), *cert. denied*, 542 U.S. 943 (2004); *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir. 1996); *United States v. Thomas*, 55 F.3d 144, 149 (4th Cir.), *cert. denied*, 516 U.S. 903 (1995); *Cowart v. Hargett*, 16 F.3d 642, 646 (5th Cir.), *cert. denied*, 513 U.S. 886 (1994); *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993); *Hakeem v. Beyer*, 990 F.2d 750, 759-60 (3d Cir. 1993). The district court concluded that Jackson had not demonstrated any *actual* prejudice resulting from the delay and, therefore, that consideration of the other three *Barker* factors was unnecessary.

That conclusion was erroneous in two respects. First, the district court improperly conflated the first (presumptive-prejudice) and fourth (actual-prejudice) prongs of the *Barker* test. Second, it assumed, contrary to our precedents, that a defendant claiming a Sixth Amendment violation must always prove actual prejudice. *See United States v. Graham*, 128 F.3d 372, 375 (6th Cir. 1997) ("[A]ffirmative proof of particularized prejudice is not essential to every speedy trial claim."

(internal quotation marks omitted)).  As the Fifth Circuit wrote in *United States v. Bergfeld*, 280 F.3d 486 (5th Cir. 2002):

> [T]he real error in the district court's reasoning lies in its analysis of the "prejudice" factor.  Specifically, the court looked to [the defendant]'s evidence of prejudice, decided that the evidence was not convincing, and then concluded that the lack of prejudice evidence reduced the weight of the other three factors . . . .The court's reasoning is contrary to *Doggett*.  The first three factors should be used to determine whether the defendant bears the *burden* to put forth specific evidence of prejudice (or whether it is presumed); nothing in *Doggett* endorses the district court's performing the analysis the other way around, i.e., using the absence of specific evidence of prejudice to reduce the weight of the other three factors.

*Id.* at 490.

In fact, as the United States concedes and as the magistrate judge correctly found, the delay in this case was sufficient to satisfy the first prong of *Barker* and thereby trigger the application of the full test.  *Robinson*, 455 F.3d at 607 ("A delay approaching one year is presumptively prejudicial."); *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005) (same); *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir.) (same), *cert. denied*, 540 U.S. 973 (2003); *United States v. Moss*, 217 F.3d 426, 431-32 (6th Cir. 2000) ("The court failed to address that the ten[-]month delay in rendering its opinion on the motion to suppress was approaching the point of being presumptively prejudicial."); Gregory P.N. Joseph, *Speedy Trial Rights in Application*, 48 FORDHAM L. REV. 611, 623 n.71 (1980) ("There seems general agreement that any delay of eight months or longer is 'presumptively prejudicial.'"), *cited in Doggett*, 505 U.S. at 652 n.1.

Having determined that *Barker*'s threshold had been satisfied, the magistrate judge proceeded to apply the other three prongs of the test, concluding that Jackson had satisfied the first (length-of-delay) and third (assertion-of-right) prongs but not the second (reason-for-delay) and fourth (actual-prejudice) prongs.  The district court subsequently adopted the Report and Recommendation.[2]  Therefore, although the district court's own reasoning appears to conflict with that of the magistrate judge as to the proper application of the first prong of *Barker*, the district court's order should nonetheless be permitted to stand if the magistrate judge correctly applied the *Barker* test, because either the district court incorporated the reasoning of the Report and Recommendation into its own opinion by adoption or the district court's error was harmless.

In determining that the government had a permissible reason for the delay, the magistrate judge found as follows:

> The "reason for the delay" is rather straightforward:  This is a multi-defendant indictment, and the government spent a not inconsiderable amount of time attempting to find and to apprehend those defendants who were at large.  Defendant was in prison in the Commonwealth of Virginia and the government simply devoted its time and attention to apprehending other defendants.  The government's failure to bring defendant before this court was not motivated by any ulterior, sinister motive.  If defendant had been more or less immediately arrested and brought before this Court on a writ of habeas corpus *ad prosequendum*, he nevertheless would find himself in the same position as he is now—awaiting his trial.

---

[2] Jackson objected in the district court to the portions of the magistrate judge's Report and Recommendation that were unfavorable to him, thereby preserving his claim for appellate review.  *Thomas v. Arn*, 728 F.2d 813, 814-15 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).

J.A. at 67 (R & R at 5).

The magistrate judge misstated the law in asserting that the diversion of government resources to the pursuit of higher-priority suspects is an explanation sufficient to satisfy the second prong of *Barker*. We have previously held that

> [n]ot all delays are susceptible to equal blame. Governmental delays motivated by bad faith, harassment or attempts to seek a tactical advantage weigh heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily *but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant*. A valid reason for a delay, such as an unavailable witness, weighs in favor of the government. Finally, it should be noted that the second *Barker* factor is not a search for a blameless party; instead, the concern is with whether the government or the criminal defendant is more to blame for the delay.

*Schreane*, 331 F.3d at 553-54 (emphasis added) (internal quotation marks and citations omitted).

As *Schreane* implies, "[b]ecause the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner . . . the burden is on the prosecution to explain the cause of the pre-trial delay." *United States v. Brown*, 169 F.3d 344, 349 (6th Cir. 1999) (omission in original) (internal quotation marks omitted). In this case, the United States asserts that its delay in arresting Jackson was the result of its efforts to locate and arrest his co-defendants and argues that, "once the New York co-defendants in this case were arrested, particularly co-defendant Garnier, there was virtually no delay in proceedings against defendant and similarly situated co-defendants." Appellee Br. at 28.

Even if the arrest of Garnier were a pivotal event for purposes of the speedy-trial analysis (and it is far from clear that that is the case), however, the government utterly fails to explain why it waited to arrest Jackson until more than three months after Garnier made his initial appearance. Nor does it attempt to proffer a valid reason for neglecting ever to file a detainer with the Virginia prison authorities, which would have notified Jackson of the charges pending against him without diverting investigative resources needed to apprehend other suspects. Under the circumstances of this case, therefore, the magistrate judge erred in finding that the undisputed reason for the delay did not weigh against the government.

In considering the fourth (actual-prejudice) prong of the *Barker* test, moreover, the magistrate judge improperly focused on the fact that Jackson was not subjected to "oppressive pretrial incarceration," J.A. at 68 (R & R at 6), failing to note that prejudice to the defense is preeminent among the concerns underlying the speedy trial right:

> This Court has identified three . . . interests [of defendants that the speedy trial right is intended to protect]: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. *Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system*. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker*, 407 U.S. at 532 (emphasis added).  On appeal, however, Jackson does not offer any evidence of actual prejudice.[3]  Instead, he argues "that the length of the delay herein was so lengthy as to amount to being 'presumptively prejudicial.'"  Appellant Br. at 25.

While Jackson is correct, insofar as the court's "consideration of prejudice is not limited to the specifically demonstrable," *Doggett*, 505 U.S. at 655, the delay in this case was not so long as to justify an inference of prejudice at the fourth step of the *Barker* inquiry.

> In *Doggett*, the Supreme Court addressed the amount of prejudice that a defendant must prove when the government is negligent in its pursuit and prosecution of a defendant.  Unlike a bad-faith delay, from which prejudice is presumed, or governmental exercise of reasonable diligence, from which actual prejudice must be proven, "our toleration of . . . negligence varies inversely with its protractedness . . . and its consequent threat to the fairness of the accused's trial."  In other words, the longer the delay that is traceable to the state's conduct, the more prejudice that will be presumed.

*Wilson v. Mitchell*, 250 F.3d 388, 396 (6th Cir. 2001) (alterations in original) (internal citation omitted) (quoting *Doggett*, 505 U.S. at 657).

The *Doggett* Court held that an eight-and-a-half-year delay between indictment and arrest, which "far exceeds the threshold needed to state a speedy trial claim," entitles a defendant to relief even absent proof of actual prejudice.  *Id.* at 657-58.  In *Barker*, however, the Court found an "absence of serious prejudice" despite an "extraordinary" delay of more than five years between arrest and trial.  407 U.S. at 533-34.  Because "prejudice was minimal," and because the evidence showed that "Barker did not want a speedy trial,"[4] the Court declined to dismiss the indictment on speedy-trial grounds.  *Id.* at 534-36.

We have similarly found that particular delays result in only minimal prejudice.  *Schreane*, 331 F.3d at 559 ("Based on the facts and circumstances of this case, the portion of the delay attributable to the government's negligence, which is at most thirteen and one-half months, does not give rise to a presumption of prejudice.  When prejudice has been found, the government's delay has typically been shockingly long." (internal citations omitted)); *United States v. Smith*, 94 F.3d 204, 212 (6th Cir. 1996) ("[T]he presumptive prejudice arising out of the three-year delay in this case, if any, is negligible at best . . . [and] does not approach the 'extraordinary' eight-and-a-half-year delay in *Doggett*."), *cert. denied*, 519 U.S. 1133 (1997); *Payne v. Rees*, 738 F.2d 118, 123 (6th Cir. 1984) ("[W]e can find no error in the district court's conclusion that there was no proven speedy trial violation, taking into account all the *Barker* factors, despite the extraordinary [over three-year] delay here involved.").

Thus, the first three *Barker* prongs (length of the delay, reason for the delay, and assertion of the right) weigh in Jackson's favor, while the fourth factor (actual prejudice) weighs against him.  Because neither a ten- nor a twenty-month delay is extraordinary under our precedents, and given the lack of evidence of actual prejudice to Jackson or bad faith on the part of the government, the district court reasonably concluded that Jackson has not established a speedy-trial violation

---

[3] In his motion to dismiss, Jackson argued that his defense was prejudiced by the death of his Virginia state probation officer, which occurred during the post-indictment, pre-arrest delay in this case.  The magistrate judge rejected that argument, and Jackson has not renewed it in this court.

[4] In this case, the record indicates that Jackson did truly want a speedy trial.  For the purposes of the prejudice prong, as opposed to the balancing of all four factors, however, this fact is immaterial.

warranting dismissal. Accordingly, we **AFFIRM** the denial of Jackson's motion to dismiss on Sixth Amendment grounds.

## IV. THE ADMISSIBILITY OF THE EVIDENCE

Jackson next argues that the district court erred in admitting evidence that he sold crack cocaine to a police informant on January 3, 2000. That evidence was the basis for Jackson's Virginia state conviction, of which the jury in the instant case was not informed. According to Jackson, the evidence was inadmissible (1) under Federal Rule of Evidence 403, because it was substantially more prejudicial than probative; (2) under Federal Rule of Evidence 404(b), because it was used to prove his propensity to engage in criminal activity; and (3) under the Double Jeopardy Clause of the Fifth Amendment, because it was introduced in an attempt to punish him twice for the same offense. We review a district court's evidentiary rulings for an abuse of discretion. *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006).

Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. "In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *United States v. Moore*, 917 F.2d 215, 233 (6th Cir. 1990) (internal quotation marks omitted), *cert. denied*, 499 U.S. 963 (1991).

Jackson first argues that the evidence is probative only of a separate and unrelated crime similar to the one with which he was charged in this case and, thus, that "the jury . . . was seduced into a sequence of bad character reasoning." Appellant Br. at 29. The record indicates, however, that the drug transaction that gave rise to Jackson's Virginia state conviction took place at the same physical location and within the same time period as did the events giving rise to the charges in this case. The United States claims, and the jury in this case found, that Jackson received deliveries of crack cocaine from his co-conspirators at his home in Bristol, Virginia, between June 1999 and January 2000, and that he then sold the crack cocaine to individual users. Evidence that Jackson sold crack cocaine to a police informant at Jackson's home on January 3, 2000 (an act that led to his arrest by Virginia state police the following day and thereby, apparently, ended his participation in the conspiracy at issue here) thus constitutes evidence of the conspiracy itself, not of some unrelated act demonstrating nothing more than Jackson's propensity to sell crack. The district court did not, therefore, abuse its discretion in finding the evidence admissible under Rule 403.

For the same reason, the evidence is admissible under Rule 404(b), which provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b). The evidence at issue here was introduced not to cast aspersions on Jackson's character but to prove that he played the role of a street-level distributor in this conspiracy, and it was properly admitted for that purpose. *See United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.

1995) ("Rule 404(b) does not apply where the challenged evidence is inextricably intertwined with evidence of the crime charged in the indictment." (internal quotation marks omitted)).

Jackson also contends that the introduction of the challenged evidence subjected him to a second trial for a single crime, in violation of the Fifth Amendment, which provides, in relevant part, that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V. Under the dual-sovereign doctrine, however, "the double jeopardy clause does not apply to suits by separate sovereigns, even if both are criminal suits for the same offense." *United States v. Louisville Edible Oil Prods., Inc.*, 926 F.2d 584, 587 (6th Cir.) (internal quotation marks omitted), *cert. denied*, 502 U.S. 859 (1991). Accordingly, we hold that the district court did not abuse its discretion in admitting the challenged evidence.

## V.  THE SUFFICIENCY OF THE EVIDENCE

Jackson next claims that the government's evidence was insufficient to support his conviction. He argues that, by acquitting him of the charge involving more than fifty grams of crack, the jury demonstrated that it did not credit the testimony of the government's witnesses, who claimed to have sold or delivered to him amounts far in excess of fifty grams.

> When reviewing the sufficiency of evidence in support of a jury verdict, this Court views the evidence in the light most favorable to the prosecution and gives the prosecution the benefit of all reasonable inferences from the testimony. Viewing the evidence in this manner, a jury verdict is supported by sufficient evidence if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In sum, a defendant claiming insufficiency of the evidence bears a very heavy burden.

*United States v. Abboud*, 438 F.3d 554, 589 (6th Cir.) (emphasis in original; internal quotation marks and citations omitted), *cert. denied*, 127 S. Ct. 446 (2006); *see also United States v. Johnson*, 440 F.3d 832, 839 (6th Cir.) ("We are bound to make all reasonable inferences and credibility choices in support of the jury's verdict." (internal quotation marks omitted)), *cert. denied*, 127 S. Ct. 48 (2006).

Contrary to Jackson's argument, the jury's two verdicts were not necessarily inconsistent. The jury might have concluded that each of the government's witnesses was somewhat—but only somewhat—credible, and discounted the testimony accordingly. Moreover, even

> where truly inconsistent verdicts have been reached, [t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First . . ., inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*United States v. Powell*, 469 U.S. 57, 64-65 (1984) (first and second alterations in original) (internal quotation marks and citation omitted). Accordingly, we hold that Jackson's conviction was based upon sufficient evidence.

## VI.  THE ALLEGED VOUCHING

Finally, Jackson argues that, during closing arguments, the prosecutor improperly and repeatedly vouched for the credibility of the government's witnesses.

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility[,] thereby placing the prestige of the office of the United States Attorney behind that witness. [I]mproper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury . . . . On the other hand, [b]olstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury.

*United States v. Trujillo*, 376 F.3d 593, 607-08 (6th Cir. 2004) (second, third, and fourth alterations in original) (internal quotation marks and citations omitted).

> We have

> adopted a two[-]step approach for determining whether prosecutorial misconduct warrants a mistrial.  First we determine whether a prosecutor's conduct and remarks were improper, and then we determine whether the impropriety amounts to reversible error.  As to the second part of the test, we consider whether the conduct and remarks tended to mislead the jury or to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the evidence against the accused.

*United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir.) (internal citation omitted), *cert. denied*, 519 U.S. 872 (1996).  "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."  *Id.* at 1040 (internal quotation marks omitted).  "Whether improper vouching amounts to prosecutorial misconduct and whether it renders the trial fundamentally unfair are mixed questions of law and fact reviewable *de novo*."  *Trujillo*, 376 F.3d at 608 (internal quotation marks omitted). When, however, a defendant fails (as did Jackson) to object to the vouching in the district court, we review only for plain error.  *Collins*, 78 F.3d at 1039.

In this case, the prosecutor's closing argument included the following statements, to the italicized portions of which Jackson now objects.

> This is about trafficking in cocaine, trafficking in crack cocaine, and ladies and gentlemen, *you saw Tameka White and there are some things that are universal, that are true*, and you saw Tameka White testify.  She did not want to testify against this person who was a childhood friend.  *Tameka White was telling you the truth.  That is the truth in this case*.

J.A. at 260 (Closing Arg. Tr. at 3) (emphases added).

> Ladies and gentlemen, when you analyze this evidence in the back, I want you to think of two things.  First of all, you know there was a conspiracy, period.  It didn't get here without it.  Second of all, there is *absolutely no motive whatsoever* for all three of those people to just randomly add Charles Jackson's name.  Mr. Pryor will not give you one that is reasonable, because there is no reason for that.  There were plenty of people involved.  They gave all the names.  *There is absolutely no motive for that*.  When you go back there and you think about this evidence and somebody

is talking and you're working through the evidence, remember this had to get here through a conspiracy and *there is no motive* for Tameka White or for Vernon McCallum or for Latanya Simpson to add Charles Jackson.

J.A. at 261 (Closing Arg. Tr. at 4) (emphases added).

In addition to the witnesses' testimony, the evidence is corroborated by numerous flights and as you think about Latanya Simpson and Tameka White, Vernon McCallum telling you what happened, telling the police what happened, before they had a plea agreement, before they even could contemplate being right here in this courtroom, they were giving up Charles Jackson. Those flight records existed. They corroborate what they say. They exist, *no matter what they say, and lo and behold, they are consistent, because they are the truth* and the truth is sort of like the rain. If you go outside and look behind your garage and the ground is covered with rain, it's everywhere. It's not just luck that this Defendant happened to sell the exact same thing that he was conspiring to sell in the conspiracy. *It's because it's the truth.* It happens everywhere.

J.A. at 262 (Closing Arg. Tr. at 6) (emphases added).

Their testimony did not exaggerate where an exaggeration would have helped them. Latanya Simpson was asked, "Well, how much did it weigh?" She could have said, "Oh, it weighed about an ounce," but what she said was—and you saw her, you decide if she is smart enough to spontaneously, all three of them, come up with Charles Jackson, but she said, "I can tell you what it looked like, but I can't tell you what it weighed," *and that's true. That is the truth. That is a hallmark of the truth.* When they limited the amount of time that Charles Jackson was involved in the conspiracy, they could have said he was right there at the very beginning, but they didn't. Ladies and gentlemen, three people, unprompted, at different places, at different times, say the same thing and that is that Charles Jackson is a distributor. Not he's the kingpin, he doesn't have anything to do with transportation or money or cooking. *They just say the truth. No matter who they are, they just told you the truth*, and you know what, crack dealers, people involved in that trafficking business, they're not . . . that is what jurors are going to see, because that's who they are.

J.A. at 262-63 (Closing Arg. Tr. at 6-7) (emphases added).

Ladies and gentlemen, you can say what you want about Tameka White, but there are some things that are universal. If you watched her and paid attention to her demeanor, *you saw the truth.* You saw somebody reluctant and in pain to testify about a childhood friend of hers and *that is the truth . . . .*

J.A. at 263 (Closing Arg. Tr. at 7) (emphases added).

While the prosecutor's repeated assertions that certain witnesses were saying "the truth" are troubling, the district court did not plainly err in failing sua sponte to strike the statements. First, although the remarks were repeated and improper, it appears that the prosecutor was attempting, however ineptly, to argue that the government's witnesses were credible because their testimony was consistent and corroborated by non-testimonial evidence and because they had no reason to lie. While Jackson may disagree with each of those contentions, none was founded upon an implication that the prosecutor personally believed the witnesses or knew of evidence not before the jury that demonstrated their truthfulness. Moreover, the evidence against Jackson was, if not overwhelming, undeniably strong. The consistent testimony of three witnesses was corroborated by a tape recording of Jackson conducting a drug deal in the same location and during the same time period in which

he was allegedly involved in the conspiracy. Finally, in reviewing the district court's actions for plain error, we are mindful of a trial court's superior ability to assess aspects of an argument such as delivery and context. For all of these reasons, we hold that the district court did not plainly err in failing to strike sua sponte the prosecutorial statements in the context of this case.

## VII. CONCLUSION

Because dismissal is not an available remedy for the Speedy Trial Act violation that occurred in this case, because the constitutional Speedy Trial Clause was not violated, because the government's evidence was admissible and sufficient, and because the district court did not plainly err in failing sua sponte to strike the prosecutor's remarks in closing argument, we **AFFIRM** Jackson's conviction.