**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 07a0072n.06**
**Filed: January 29, 2007**

**No. 05-2634**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ALLEN EDWARDS, also known as Allen | ) | EASTERN DISTRICT OF MICHIGAN |
| Donnell Edwards, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SUHRHEINRICH, GIBBONS, and COOK, Circuit Judges.

COOK, Circuit Judge. Detroit Police witnessed defendant Allen Edwards firing a SKS Saiga assault rifle into the air on December 31, 2004. Three police officers testified at his trial, each providing an eyewitness account of the events. As a paroled felon, Edwards's possession of the weapon violated 18 U.S.C. § 922(g). A jury found Edwards guilty, and the district court sentenced him to 70 months. Edwards now appeals his conviction. For the reasons discussed below, we affirm.

**I. Rebuttal Comments**

Edwards claims his trial was tainted by prosecutorial misconduct from a comment by the

government during its closing argument. These excerpts illustrate the context for this challenge.

Edwards's counsel made the following statement during his closing argument:

You know, when you see that supposedly you're saying that Mr. Edwards had the gun and later you find out you put in your report Mr. Moore had the gun, why don't you fingerprint the gun? Why don't you send it out for fingerprints? Incontrovertible proof, fingerprints. No two people have the same fingerprints. Fingerprint the firearm. Mr. Edwards' fingerprints on the firearm? Mr. Moore's fingerprints on the firearm?

During its closing argument, the government responded to this assertion as follows:

Defendant mentions these fingerprints, why don't we have fingerprints? Well, the evidence had been touched by so many people, who were we going to get fingerprints back from? We couldn't get fingerprints, and besides that, the officers saw the Defendant with this firearm. You have direct testimony. Someone sees something. You see me standing here right now; it's unrefuted. You see this pen in my hand right now; it's unrefuted. Do you need a fingerprint for this pen to know that I'm touching this pen right now? I don't think so.

Because Edwards did not object at trial, we review his prosecutorial misconduct claim for plain error using a two-step analysis. *United States v. Jackson*, ___ F.3d ___, No. 05-6014, 2007 WL 77964, at *9 (6th Cir. Jan. 12, 2007). We first determine whether the prosecutor's comments were improper. *Id.* If the comments were improper, we consider the following four factors in determining if the comments were flagrant: "whether the conduct or remarks tended to mislead the jury or to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the evidence against the

accused." *Id.* (quoting *United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir. 1996)).

## A. Impropriety

In determining the impropriety of the prosecutor's comment, we "view the conduct at issue within the context of the trial as a whole." *United States v. Beverly*, 369 F.3d 516, 543 (6th Cir. 2004). "It is also appropriate to consider whether, and to what extent, a prosecutor's improper argument is invited by defense counsel's statements." *United States v. Jacobs*, 244 F.3d 503, 508 (6th Cir. 2001). Edwards characterizes the prosecutor's comments as improperly discussing additional evidence not introduced at trial. *See Berger v. United States*, 295 U.S. 78, 84 (1935). He contends that the government never introduced evidence that other people touched the firearm, as the prosecutor seems to imply; moreover, Edwards construes the statement "[w]e couldn't get fingerprints" as an implicit admission that the government conducted a fingerprint test. This overstates the inferences which can be drawn from the prosecutor's comment. Although the comment does imply that a number of people touched the gun, the inference that the government actually conducted a test that contained too many fingerprints to be useful is fairly attenuated. Nevertheless, to the extent the prosecutor's comment introduced additional evidence about fingerprints on the weapon, they were arguably improper.

## B. Flagrancy

Edwards cannot establish reversible error, however, because the prosecutor's brief comment

cannot plausibly constitute flagrant prosecutorial misconduct under the relevant four-factor test. *See Collins*, 78 F.3d at 1039. First, the advantage the government could have gained by misrepresenting that it performed an inconclusive test is minimal, if not illusory. Edwards claims that this remark "bolstered" what he contends was an error-prone and incomplete police investigation and that it "implied all possible steps were taken to develop the evidence, when, in fact, they had not been." Evidence elicited by the prosecutor during the trial belies this argument, as the government freely admitted it did not test the weapon for fingerprints.[1] Viewing the statement in context, it is difficult to see how the remarks tended to mislead the jury or prejudice the accused. *United States v. Barnett*, 398 F.3d 511, 522 (6th Cir. 2005). Examining the second factor, the comment was isolated and limited to one sentence in the government's summation. *Id.* Third, nothing about the remark suggests a deliberate attempt to mislead the jury; rather, the context of the statement suggests the prosecutor was searching for an additional response to Edwards's fingerprints argument beyond her already well-grounded assertion that eyewitness testimony suffices to prove the crime charged. *Id.* The government's brief denies any deliberateness, characterizing the statement as "nothing more than [an] overzealous, emotional response[] to strained exculpatory arguments advanced by the defense," *United States v. Smith,* 561 F.2d 8, 13 (6th Cir. 1977), and the context of the statement supports this characterization. And finally, the strength of the evidence against Edwards minimizes any harm the statement could cause. *Barnett*, 398 F.3d at 522. Although Edwards emphasizes a

---

[1] This information was conveyed as a question directed to an investigating officer: "Officer Hull, if you see a person in possession of a firearm, is it necessary that you submit it for fingerprints?" The officer responded, "No ma'am."

- 4 -

mistake the police made in one section of their report,[2] the government produced eyewitness testimony from three police officers who witnessed Edwards possess and fire the gun. We hold the prosecutor's arguably improper comment was not flagrant, and thus the district court did not plainly err.

## II. Oral Jury Instruction Error

While charging the jury, the court made the following statement, which, in part, erroneously put the burden on the defendant to prove his innocence beyond a reasonable doubt:

> Your verdict, ladies and gentlemen, whether it is guilty or not guilty must be unanimous and to find the defendant guilty, each and every one of you must agree that the Government has overcome his presumption of innocence and with evidence that proves his guilt beyond a reasonable doubt. To find the Defendant not guilty, every one of you must agree that the Defendant has failed to convince you beyond a reasonable doubt. Either way, guilty or not guilty, your verdict must be unanimous.

Because Edwards did not object to this instruction, we review his claim under the plain-error standard. *United States v. Jones*, 108 F.3d 668, 670 (6th Cir. 1997). Edwards must show a plain error that affected his substantial rights. *Id.* We have discretion under Fed. R. Crim. P. 52(b) in

---

[2] In preparing the police department report, Sergeant Decker mistakenly stated in the "Property Section" of the report that the firearm was recovered by Allen Moore (no person named Allen Moore was involved in the situation). Because the "Property Section" of the report is reproduced in the other officers' reports, the mistake appeared in those "Property Sections" as well. In the narrative section, however, Decker correctly identified Edwards as having possessed the firearm. Additionally, Decker apparently misspoke during his testimony, referring to Edwards as "Mr. Allen." His testimony makes clear that there was no ambiguity at trial about whom Decker was speaking. Edwards attempts to discredit the government's case based on these errors, but these inconsistencies appear clearly outweighed by the officers' testimony.

choosing whether to correct a plain error, and we generally decline to exercise that discretion unless "the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation omitted).

Here, although Edwards has no difficulty demonstrating an error by the district court that was plain—the *government* must convince the jury beyond a reasonable doubt—he cannot make any meaningful showing that the court's misstatement affected his substantial rights. First, the district court correctly stated the government's burden of proof in the written instructions provided to the jury. Second, as the government's brief illustrates in detail, the court repeatedly stated the government's burden correctly during its preliminary instructions to the jury and its final charge to the jury. Viewing the court's misstatement in context, Edwards clearly cannot meet his burden to show that the error affected his right to a fair trial in any meaningful way—there is no reason to believe the jury required Edwards to prove his innocence beyond a reasonable doubt. We decline to grant Edwards a new trial.

### III. Ineffective Assistance of Counsel

Edwards advances three ineffective-assistance-of-counsel claims based on his trial counsel's alleged failures: (1) trial counsel failed to object to the prosecutor's comment about fingerprints on the gun (discussed in Section I); (2) trial counsel failed to object to the district court's error in reading the jury instructions (discussed in Section II); (3) trial counsel failed to seek a test-firing of the weapon Edwards is charged with possessing. Edwards faces a bar to bringing these claims on

direct appeal, however, because, "[g]enerally . . . 'this court will not review [such claims] on direct appeal because the record has not been sufficiently developed for assessing the merits of the allegation.'" *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997) (quoting *United States v. Goodlett*, 3 F.3d 976, 980 (6th Cir.1993)). But, Edwards urges—and the government agrees—that the record is sufficiently developed for our review.

To establish ineffective assistance of counsel, Edwards must show both that counsel's performance was deficient, *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and "a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Id.* at 694. We need not engage in a formalistic assessment of counsel's performance, however, in cases where defendants clearly cannot show prejudice. *Id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

First, Edwards's trial counsel's failure to object to the prosecutor's brief discussion about fingerprints on the weapon does not rise to the level of constitutionally deficient assistance of counsel. Just as Edwards could not show that the prosecutor's improper remark was flagrant, he cannot demonstrate how a well-timed objection by his attorney would have changed the outcome of his trial.

Second, Edwards's trial counsel's failure to object to the court's brief misstatement of the standard of proof did not prejudice him in any significant sense. Because the court instructed the

jury properly numerous times and provided them with correct written instructions, Edwards fails to show how an objection by his trial counsel would have led to his acquittal.

Finally, Edwards claims his trial counsel was deficient in failing to obtain a test-firing of the weapon he was charged with possessing. Although Edwards likely cannot show his trial counsel's performance was deficient, he fails to explain how "the result of the proceeding would have been different." *Id.* at 694. The facts surrounding his challenge illustrate this difficulty. Four months after his trial, at Edwards's direction, the Federal Defender Office filed a motion requesting a test-fire of the weapon because, they explained, "Defendant believes that the firearm will not operate with the magazine which was introduced into evidence, and, therefore it is impossible for Officer Channells to have seen him firing the weapon with the magazine which was introduced at trial." The government tested the weapon for fire-ability prior to trial, and it was operable (18 U.S.C. § 922(g) requires only that the firearm be made readily operable).

Edwards essentially sought to have the weapon tested with that particular magazine to make a belated attack on the testifying officers' credibility. This challenge is unavailing, however, because Edwards provides no evidence other than his own assertion to support his position that the magazine attached to the firearm at the trial would render the weapon inoperable. Moreover, the police recovered the weapon on the ground near Edwards and then tested that weapon and proved that it was capable of firing. Three officers then testified they saw Edwards with this same weapon in his possession. Even assuming the government accidentally attached the wrong magazine to the weapon

when it was displayed at trial—an assumption for which we have no basis other than Edwards's own post-conviction assertion—there is no reason to believe the government could not have corrected its mistake and displayed the gun with the correct magazine.

As a final point, we note that were Edwards advancing this argument as a challenge to the sufficiency of the evidence against him (which it essentially is, though he casts it as an ineffective-assistance claim), we would decline to entertain it: an appellate court does "not consider the credibility of witnesses or weigh the evidence." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005).

Thus, because Edwards cannot prove he was prejudiced by any of his counsel's decisions at trial, we deny his ineffective-assistance claims.

## IV. Conclusion

Edwards cannot show that any of the errors require us to grant him a new trial; thus, we affirm his conviction.