KAREN NELSON MOORE, Circuit Judge,
concurring in the judgment.
I concur in the judgment of the court. However, I note my disagreement with the majority’s refusal to consider the lack of fingerprint or DNA evidence tying Garcia to the gun recovered from the snow. The majority emphasizes that our sufficiency-of-the-evidence review is restricted to the evidence presented at trial. The evidence that no fingerprints were recovered from the gun and no DNA testing was conducted was introduced at trial. On direct examination by the government, a forensics *726 examiner for the Kalamazoo County Sheriffs Department testified that no fingerprints were recovered from the gun, shell casings, or bullets. R. 74 (Trial Tr. I at 205) (Page ID # 559). The examiner testified that conditions were “far from ideal” for the recovery of fingerprints due to the gun being found in snow and the materials of which the gun and bullets were made. Id. at 205-07 (Page ID #559-61). On cross-examination by Garcia’s counsel, the examiner testified that the trigger, trigger guard, and grip of the gun were swabbed for DNA, but that the DNA was never tested. R. 75 (Trial Tr. II at 229) (Page ID # 583). The examiner testified that factors in deciding whether to run tests included cost, the expectation of a probative result, and time. Id. at 231 (Page ID # 585). Garcia did not conduct independent fingerprint or DNA testing that he is attempting to introduce for the first time to this court; he is simply asking this court to consider testimony that both he and the government solicited on the investigative decisions of the police and forensic examiners. The failure to recover fingerprints and the decision not to conduct DNA testing was in front of the jury and so may be considered in our review of the sufficiency of the evidence. See United States v. Bailey, 553 F.3d 940, 946 (6th Cir.2009) (reversing a conviction due to insufficient evidence and noting that “[o]f particular significance, the government could not show that Bailey’s fingerprints were on the gun”). Considering this, and all other evidence presented at trial “in the in the light most favorable to the prosecution,” I conclude that “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,” United States v. Geisen, 612 F.3d 471, 488 (6th Cir.2010) (internal quotation marks omitted), and therefore agree that the government produced sufficient evidence of Garcia’s guilt.
I also agree that the district court did not abuse its discretion in sentencing Garcia.
I do not agree, however, that a prosecutor telling the jury during closing argument that a witness told the truth is “unobjectionable.” Maj. Op. at 723. The prosecutor suggested that VanderKlok must have been telling the truth because if he was going to lie, he would have told a better lie.[1] Then, the prosecutor stated that “[VanderKlok] came in here, he took an oath to tell the truth, and he told you the truth about what happened that night. About what he saw.” R. 75 (Trial Tr. at 338) (Page ID # 692). Together, these statements constitute an improper expression of the prosecutor’s personal belief about VanderKlok’s credibility.
The prosecutor’s theory that a liar would have told a more beneficial lie is not an “ostensibly commonsense conclusion.” Maj. Op. at 724. The psychology of lying is not a matter of common sense or common knowledge. Cf. Slagle v. Bagley, 457 F.3d 501, 519 (6th Cir.2006) (holding that a prosecutor may properly ask the jury to use common knowledge to make the inference that walking across a floor with floorboards produces a creaking noise). The prosecutor’s statement that if VanderKlok were lying he would have said that he saw Garcia drop the gun is nothing more than speculation. This speculative theory was followed by the blunt comment that Van-derKlok “told you the truth.” This was not an argument for a witness’s credibility grounded in the evidence introduced at trial. Cf. United States v. Reid, 625 F.3d *727 977, 985 (6th Cir.2010) (holding that a prosecutor’s suggestion that a lying witness would have lied more persuasively was not improper when followed by the statement that the witness’s testimony was corroborated by four other people); Cristini v. McKee, 526 F.3d 888, 901-02 (6th Cir.2008) (calling witnesses “liars” was not constitutionally improper because the “arguments focused the jury on the evidence, not the prosecutor’s personal opinion”). Nor did the prosecutor ask the jury to conclude that VanderKlok was credible based on his demeanor or the specific circumstances of his testimony. Cf. United States v. Jackson, 473 F.3d 660, 672 (6th Cir.2007) (holding that a prosecutor’s repeated statements that a witness told the truth were improper but did not express a personal belief in the witness’s credibility because the prosecutor asked the jurors to infer credibility from the consistency of the testimony and the fact that the witness had no reason to lie). Instead, based on the prosecutor’s personal opinion that a liar would have told a different story, the prosecutor shared his conclusion that Van-derKlok told the truth.
The majority suggests that a prosecutor’s comments are not improper vouching unless the remarks “put the spotlight on the prosecutor — the prosecutor’s personal beliefs, the prestige of her office, her power to enforce and implement the plea agreement, her unique knowledge of the facts, etc.” Maj. Op. at 724. A remark need not be so obvious to be improper. This circuit has clearly held that a prosecutor can express a personal belief without making an “I” statement. See Hodge v. Hurley, 426 F.3d 368, 378 n. 20 (6th Cir.2005); United States v. Krebs, 788 F.2d 1166, 1176-77 (6th Cir.1986). Stating that VanderKlok told the truth — not based on the evidence or the jury’s ability to assess credibility, but simply based on the prosecutor’s own personal speculation about how liars lie — is an improper expression of personal belief. The prosecutor need not do anything special to shine a spotlight on the prestige of the office. By standing in front of the jury as the representative of the United States government, the prosecutor embodies the office, and the very act of expressing the prosecutor’s “personal belief in the truthfulness of the witness’s testimony ... plac[es] the prestige of the office of the United States Attorney behind that witness.” United States v. Emuegbunam, 268 F.3d 377, 404 (6th Cir.2001). Unmoored from the evidence or inferences based on the demeanor of the witness, this prosecutor’s remarks reflected nothing more than his personal belief about the veracity of VanderKlok’s testimony. The remarks, therefore, were improper.
Nonetheless, I conclude that it was not plain error for the district court to fail to strike the statements sua sponte. The evidence against Garcia was not strong, so VanderKlok’s testimony that he saw objects fall from Garcia was significant. However, the statement that VanderKlok told the truth was a single, isolated comment. The prosecutor’s reminder to the jury that they were “to decide if what [they] heard on the witness stand was true,” R. 75 (Trial Tr. at 316) (Page ID # 670), and the district judge’s instruction to the jury that it was the “sole judge of the credibility of witnesses,” id. at 307 (Page ID # 661), mitigated the comment’s potential to mislead. United States v. Martinez, 981 F.2d 867, 871 (6th Cir.1992). Given all the circumstances, I conclude that the district court did not plainly err in failing to strike sua sponte the prosecutorial statements in the context of this case.

. Specifically, the prosecutor stated, "[i]f Sergeant VanderKlok is lying about what he saw, why didn’t he just come in here and tell you, ‘Yeah, I saw him drop the gun’? Wouldn’t that make it a lot easier for everybody? 'I saw him drop the gun.’ Because that’s not what he saw.” R. 75 (Trial Tr. at 338) (Page ID # 692).