NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0536n.06
Filed: August 29, 2008

No. 05-5563

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United |
| | ) | States District Court for the |
| GARY MUSICK, | ) | Eastern District of Tennessee |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before:     BOGGS, Chief Judge; MCKEAGUE, Circuit Judge; and COHN, District Judge.[1]

**BOGGS, Chief Judge.**   Gary Musick was convicted of conspiring to distribute and to possess, with the intent to distribute, a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and two counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii). Musick was acquitted of conspiring to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). Musick forfeited his interest in one million dollars in currency and real property and was sentenced to 235 concurrent months of imprisonment on each count. Musick appeals his conviction and

---

[1]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

sentence. He alleges fourteen errors in his trial and seeks to have his convictions reversed and the

charges dismissed or the a grant of a new trial. He also seeks a new sentencing hearing. Having

determined that each of Musick's arguments are without merit, we affirm.

**I**

On October 28, 2003, Musick was charged in a nine-count superseding indictment. Count

One charged appellant and his mother, Lita Musick, along with Gorge Duarte, Jose Duarte,

Guadalupe Duarte, Delman Davis, Trevis Love, Craig Stewart, and Garrick Butler with conspiring

to distribute five kilograms or more of cocaine. Count Two charged appellant and five co-

conspirators with conspiring to distribute 100 kilograms or more of marijuana. Count Three charged

appellant, Lita Musick, and others known and unknown with conspiring to commit money

laundering offenses. Counts Four and Seven charged appellant and Lita Musick with substantive

money-laundering offenses. Counts One, Two, Three, and Four also demanded forfeitures upon

conviction.

Several codefendants pleaded guilty. Davis and Love were convicted in a separate trial.

Appellant and Lita Musick went to trial together on September 1, 2004.

At trial, co-conspirator Gorge Duarte testified that he dealt cocaine and marijuana in the

Morristown and Newport areas of Tennessee from 1997 or 1998 to March 2003. In 1997 or 1998,

Duarte began delivering drugs to appellant on behalf of Duarte's boss, Juan Garcia. After six

months, Duarte went out on his own, selling cocaine and marijuana to Garcia's customers. During

this period, Duarte sold thirty to fifty pounds of marijuana and one-half to one kilogram of cocaine

to appellant three or four times each month. Duarte was arrested in 1998 and jailed for five or six days. When released, Duarte immediately resumed selling drugs to appellant and continued until appellant was arrested later in 1998. Duarte and appellant resumed their transactions when appellant was released from jail one year later. Appellant began purchasing larger amounts, which Duarte estimated at 100 pounds of marijuana and kilogram quantities of cocaine per week. In 2000, Duarte began delivering the drugs to appellant's house in Morristown, Tennessee. Duarte was arrested again in 2001, remaining in custody until December 2002. When released, he began selling drugs with the assistance of his cousin, Eric Serna, and his brother, Jose Duarte.

Duarte was arrested again in 2003 and has remained in custody since. Before this last arrest, Duarte was selling an estimated five kilograms of cocaine and 300 to 500 pounds of marijuana per transaction to appellant. Duarte charged appellant approximately $22,000 per kilogram of cocaine. Duarte estimated that he sold appellant forty to forty-five kilograms of cocaine between 2002 and 2003. Some of this cocaine was delivered to a friend's house, some to other locations in Morristown and Newport, including appellant's various residences and Lita Musick's house.

Duarte kept track of his drug transactions in notebooks, which he gave to Serna when he was jailed in 2003. The notebooks were seized from Serna's safe when Serna was arrested. Referring to the notebooks, Duarte testified as to how he recorded the quantities and prices of the drugs he bought from his suppliers. Duarte also recorded transactions with his customers, noting the customer's name and the amount the customer owed. The notebooks corroborated Duarte's testimony that appellant was one of his customers. Duarte acknowledged making $250,000 in profits by selling cocaine to appellant. The only time after 1997 when Duarte did not sell cocaine to

appellant was when either of them was in jail.

Co-conspirator Eric Serna, Duarte's cousin, testified that he went to work for Duarte distributing drugs and collecting money in 2002. Serna confirmed that appellant was one of Duarte's customers and identified appellant's residence as a location where drugs were distributed. Serna testified to specific cocaine transactions with appellant, including the sale of fifteen kilograms of cocaine, stating that he helped count approximately $300,000 received from appellant. Serna also recalled cocaine deliveries to appellant's friend's house. Serna took over Duarte's drug business when Duarte went to jail in 2003 and kept the drug notebooks in a safe at his house. The notebooks were seized when Serna was arrested in 2003. Serna reviewed the notebooks and testified that appellant was one of the customers listed in the notebook.

Evidence was also introduced that appellant sold 4.8 grams of cocaine to an undercover agent on January 3, 2000, and 13.9 grams of cocaine to an undercover agent on April 7, 2000. Appellant's admission that he sold drugs on these occasions was also admitted.

Evidence of appellant's use of the proceeds from his drug dealing was also presented. Appellant's residence at 7379 Spring Creek Drive was purchased for $139,000 in Lita Musick's name on October 12, 2001. At closing, she provided a cashiers check for $29,419.01 for the down payment and closing costs.[2] On March 25, 2003, Lita Musick purchased a 2003 Lincoln Navigator

---

[2]In 2003, appellant had $15,000 of marble installed in the bathroom. The work included floor tiles engraved with dollar signs, a twelve-inch by sixty-inch slab of marble etched with the word "Escobar," and a two-foot by three-foot marble floor tile etched with the image of former Colombian cartel leader Pablo Escobar's face. Appellant made two cash payments of $7,500 each to pay for the work.

for approximately $75,000 in her name. According to the salesman, appellant and Lita Musick wanted to make a $15,000 cash down payment, and Lita Musick asked how much she could put down without having the transaction reported. When told $10,000 was the maximum amount that would not be reported, Lita Musick paid $9,500 that day and $5,500 a few days later using cashier's checks. She completed the purchase by trading-in appellant's Honda and financing the remaining $39,000. Evidence of other car purchases using cash was also presented.[3]

Western Union records showed that Lita Musick wired $5,000 to Nathan Wade on April 13, 2003, and $8,000 to Penny Gates on August 10, 2003. Wade and Gates were later identified as appellant's associates. Lita Musick's bank records show deposits totaling over $128,000 were made between December 1999 and November 2003. Of that amount, over $100,000 was deposited in cash. Appellant's bank account was rarely used. From January 2000 through appellant's arrest in November 2003, a total of $6,995 was deposited, $6,920 of which was cash. Only one check was ever written on the account.

Hamblin County Sheriff's Detective Mike Hayes testified to three incidents involving appellant. On January 31, 1998, Hayes responded to a report of an attempted suicide at appellant's grandparents' trailer. After receiving consent to search, Hayes found a 16-gauge shotgun and an

---

[3] On November 20, 2002, a 2002 Cadillac Escalade was purchased in the name of Lee Almany, a friend of appellant whose house Duarte and Serna identified as a delivery location for their drugs. Almany made three cash payments, each less than $10,000, in three weeks for the down payment. Appellant spent $8,800 in cash on rims and tires for the Escalade and had the interior reupholstered for $2,190 in cash. In 2003, appellant purchased a Volvo for his girlfriend Heather Mann for $21,000, paying the $7,000 down payment in cash. He later spent nearly $1,400 in cash for custom wheels for the car.

SKS assault rifle in appellant's bedroom closet, a red cooler containing $3,500 in cash, baggies, two small bags of drugs, and a speeding ticket issued to appellant. Hayes also found a digital scale and triple-beam scales in the room. Appellant was a juvenile at the time, and he was charged in state court with possession of drug paraphernalia and possession of cocaine for sale. In December 1999, Hayes executed a search warrant for Lita Musick's Maple Valley residence. Officers found $42,800 in cash, a receipt for a digital scale, gambling tickets, a Ruger .357 magnum pistol, four boxes of sandwich baggies, and a gold-colored necklace. Appellant was ultimately sent to a boys' home for fourteen months.

Several years later, on September 30, 2002, Hayes responded to an early morning call from appellant's Spring Creek Drive residence. Lita Musick reported that several men had forced their way into the residence, bound her, and forced her and a small child into a closet. The intruders then ransacked the house. Lita Musick told another officer that the men were looking for drugs or money.

On October 1, 2003, search warrants were executed at three locations associated with appellant. Chris Wilhoit, a Tennessee Bureau of Investigation (TBI) agent, executed the warrant for the Spring Creek Drive residence. Agents found receipts showing $6,468 of cash purchases from several Las Vegas stores and a receipt for the purchase of a 2002 Honda indicating an $8,000 cash payment had been made. The search of Lita Musick's Ray Street residence resulted in seizure of receipts, tax documents, and a gold necklace. A search of another of appellant's apartments, this one at Harrison Ferry Road in Baneberry, Tennessee, led to seizure of $2,700 in cash, baggies, four digital scales, a Scotch Guard can with a hidden compartment, receipts, and sample tiles created for appellant's renovated bathroom. Travis Owensby and Jeremy Jones, appellant's roommates, were

present during the search. Richard Whitt, a local policeman assigned to the DEA task force that executed the warrants, explained that the baggies were used for packaging drugs. Whitt also testified that when arrested on November 18, 2003, appellant had boasted to an officer at the scene, "Hey, Mike, tell them about me, that I don't cooperate. All the big drug dealers go to trial. Wait till they try to get me to testify."

In addition to the testimony summarized above, the Government introduced a certification from the IRS showing that appellant failed to report any income for the years covered by the drug conspiracy. The Government then rested. Appellant moved for a judgment of acquittal on the conspiracy counts, and the judge reserved decision on that motion.

In his defense, appellant introduced jail records for Gorge Duarte showing his periods of incarceration. Inmate Ricky Ramsey testified that Duarte organized a scheme to smuggle drugs into the county jail during his incarceration in 2001. Natalia Stewart, the cousin of co-conspirator Craig Stewart, whose case was still pending at the time, testified that Duarte's wife told her that Duarte was being pressured to testify against appellant. Similar testimony was provided by Gorge Duarte's brother-in-law.

Travis Owensby testified that he and Jeremy Jones rented an apartment from appellant at Harrison Ferry Road. He also testified that everything seized from the apartment during the October 2003 search belonged to him, not appellant.

Shannon Mantooth, one of appellant's girlfriends, testified that appellant made his money from gambling and not drug dealing and that she was unaware that gambling was illegal. She also testified that the Spring Creek house was really Lita Musick's house and that appellant did not own

the Escalade he drove.

Paul Collins testified that he taught appellant how to be a bookie and described appellant as a "hustler." Collins testified that some of the $42,000 seized in 1999 from appellant was his, alleging that the money was gambling proceeds. He denied that appellant was a drug dealer. On cross-examination, Collins admitted that he had two prior convictions for distributing cocaine.

Nathan Wade, a self-described professional poker player, claimed that he and appellant would play in Las Vegas where wins or losses could exceed $50,000 in a single game. He testified that they played poker two to three times each week. When asked if he reported his earnings, Wade testified that he made just enough to "make ends meet," but rated his poker skills as superior to appellant's. Wade also claimed that the money Lita Musick had wired him did not belong to appellant.

Lee Almany testified that he had filed a claim seeking return of the Escalade. The vehicle, with an outstanding lien of $34,000, was returned to him. David Holley, a friend of appellant, testified that appellant made money gambling and that Holley never knew appellant to be a drug dealer.

After appellant rested his case, Lita Musick testified in her own behalf. She told the jury she lived on Ray Street with her second son, who was twelve years old, and the son's father, and that she had worked at Hardee's for twenty-one years making biscuits. She testified that appellant was often left with his grandparents while she worked. Lita Musick disputed Detective Hayes's testimony about the 1998 search of the trailer, stating that appellant did not have a bedroom there and that the drugs and guns had been seized from her mother's bedroom.

Lita Musick testified that appellant purchased the $75,000 Lincoln Navigator for her. She believed the cash came from gambling proceeds. She testified that the $28,000 down payment for the Spring Creek residence came from money her father gave her before he died and that appellant was going to help her with the mortgage payments.

The night of the home invasion, she was at the Spring Creek residence house-sitting appellant's dogs. Appellant came home at 11:00 p.m. with $30,000, which he hid in cereal boxes before leaving. An hour later, two men knocked at the door, rushed in, bound her, and put her and her other son in a closet. The cash was not discovered. Lita Musick stated that she was "guessing" that the intruders were looking for drugs or money when she gave that opinion to Detective Hayes.

Lita Musick further testified that the Western Union transfers did not involve appellant's money. She maintained that the cash in her checking account was from individuals, including her parents, friends, and appellant, for whom she paid bills. Further, she testified that the cash gifts from her son were from gambling.

On cross-examination, Lita Musick acknowledged that she was aware appellant had been engaged in drug activity because he had been convicted of drug offenses. When asked about the $3,600 seized from her parents' trailer in 1998, she stated she did not know the money's origins. She testified that she thought appellant had been sent to a boys' home for fourteen months following the 1998 search because he had been unruly and not going to school, not for dealing drugs. She further stated that the $42,800 in cash the police seized from her Maple Valley residence in 1999 belonged to appellant and admitted that she had lied to Detective Hayes when she said the money was hers. She admitted that the intruders to the Spring Creek house were looking for drugs or money and that

she had not told police about the $30,000. She maintained that the Escalade was not appellant's car.

Lita Musick admitted that between 1998 and 2002, appellant did not have any legitimate employment to her knowledge. During that time, he often brought plastic shopping bags full of money to her house, where he would hide them. She estimated that over the past four-and-a-half years, she had deposited $111,000 in cash into her checking account, of which up to $75,000 came from appellant.

On September 17, 2004, the jury convicted appellant of the money laundering conspiracy charge in Count Three, the substantive money laundering offenses in Counts Four and Seven, and on a lesser included offense in Count One of conspiracy to distribute a quantity of cocaine. He was acquitted of the marijuana conspiracy charged in Count Two. Lita Musick was convicted on the substantive money laundering offenses in Counts Four and Seven and was acquitted of the three conspiracy charges. On September 21, 2004, the jury ordered forfeiture of appellant's interest in one million dollars in currency and his and Lita Musick's interest in real property. On February 28, 2005, appellant was sentenced to 235 months of imprisonment for each conviction, to run concurrently. On March 29, 2005, Musick filed a timely notice of appeal. Lita Musick did not appeal.

## II

Appellant has raised fourteen claims of error in his appeal. The claims are analyzed in turn below, although we have grouped together similar claims where logical.

### A. Requirements of a Proper Charge of Money Laundering

We review *de novo* whether an indictment adequately charges an offense. *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 578-79 (6th Cir. 2002).

Appellant argues that Count Three should have been dismissed for failing to state an overt act, which is a required element of a conspiracy. *See United States v. Ross*, 190 F.3d 446, 450 (6th Cir. 1999). Appellant filed a motion to dismiss Count Three, and the district court denied the motion after a hearing.

An indictment adequately charges an offense if it "(1) includes the elements of the offense intended to be charged, (2) notifies the appellant of 'what he must be prepared to meet,' and (3) allows the appellant to invoke a former conviction or acquittal in the event of a subsequent prosecution." *Ibid.* (citing *Russell v. United States*, 369 U.S. 749, 763-64 (1962) and *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir.1992)). Section 1956 states that whoever, knowing the property used in a financial transaction is proceeds from illegal conduct, "conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specific unlawful activity" is guilty of a crime.

In 2005, after appellant's conviction, the Supreme Court unanimously held that there is no requirement to prove an overt act under § 1956(h). *Whitfield v. United States*, 543 U.S. 209, 219 (2005). Following *Whitfield*, we stated that "all the government had to prove" in a § 1956 case, is that the appellant "agreed with another person to violate the substantive provisions of the money-laundering statute during the period alleged in the indictment." *United States v. Hynes*, 467 F.3d 951, 964 (6th Cir. 2006) (citing *Whitfield*, 543 U.S. at 211).

- 11 -

In this case, Count Three charged appellant with agreeing to conduct unspecified financial transactions over a five-year period with the intent of concealing illegal proceeds. The indictment does not charge an overt act. The Supreme Court's *Whitfield* opinion clearly states that an overt act is not a necessary element of a § 1956(h) prosecution. Hence, it need not be charged in the indictment, and the indictment in this case adequately charged the offense. Appellant's argument fails.

Appellant also argues that the indictment is "duplicitous" because it charged the appellant with both attempting and actually conducting money-laundering transactions. This argument is meritless. *See United States v. Colon*, 238 F.3d 367, 369 (6th Cir. 2001) (defendants indicted for both distribution of cocaine and attempt to distribute cocaine).

## B. Sufficiency of the Evidence

We review *de novo* whether the evidence was sufficient to sustain a conviction, asking if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir.), *cert. denied*, 127 S. Ct. 446 (2006). This court "views the evidence in the light most favorable to the prosecution and gives the prosecution the benefit of all reasonable inferences from the testimony." *Ibid*.

Count One of the indictment charged appellant with conspiring to distribute and possess, with intent to distribute, five kilograms or more of cocaine. Appellant argues that since the jury convicted appellant of the lesser, included offense of conspiring to distribute a quantity of cocaine, the jury rejected the evidence presented of appellant's involvement with Duarte and Serna. Appellant's Br.

at 18-19. Appellant argues that the remaining evidence, i.e., appellant's unilateral conspiracy with undercover law enforcement officers, was not sufficient to find appellant guilty under Count One. Appellant's Br. at 19-20.

We recently rejected an argument like appellant's in *United States v. Jackson*, 473 F.3d 660 (6th Cir. 2007). In that case, the panel held that a jury's acquittal of appellant on a charge of distribution and possession with intent to distribute more than 50 grams of crack cocaine was not necessarily inconsistent with a jury's conviction of appellant on a charge of distribution and possession with intent to distribute more than five grams of crack cocaine. *See id.* at 669-70. The jury could have concluded that the witnesses were not wholly credible as to the drug amount, but were somewhat credible, and partially credited their testimony accordingly. *Id.* at 670. Notably, even if the jury has rendered "truly inconsistent verdicts," an appellant may not upset such a verdict because such inconsistency does not show that "they were not convinced of the appellant's guilt" of the charges for which he was convicted. *United States v. Powell*, 469 U.S. 57, 64-55 (1984) (quoted in *Jackson*, 473 F.3d at 670).

In this case, the jury's conviction of appellant for a lesser included offense was not inconsistent with the charged offense. As in *Jackson*, the jury could have partially credited the testimony of Duarte and Serna, without rejecting it entirely. The jury could have been convinced of appellant's guilt. Given the testimony from Duarte and Serna and other evidence, it is simply not possible to say that no rational trier of fact could have found appellant guilty of conspiring to distribute a quantity of cocaine. Appellant's argument fails.

Appellant also raises a claim of insufficient evidence regarding Count Three. The indictment

charged appellant with conspiring with Lita Musick and "other persons known and unknown" to the grand jury to launder money. Appellant argues that since Lita Musick, the only named co-conspirator, was acquitted of the conspiracy count, insufficient evidence existed to find appellant guilty of the conspiracy. Appellant's Br. at 23. Appellant relies on the panel decision in *Getsy v. Michaels* for the proposition that where a jury convicts only one of multiple defendants charged with committing an offense requiring multiple participants, that conviction cannot be sustained. *See* 456 F.3d 575, 591 (6th Cir. 2006), *vacated and reheard en banc*, *Getsy v. Mitchell*, 495 F.3d 295 (6th Cir. 2007) (en banc); Appellant's Br. at 23-24. Appellant also argues that the Government provided insufficient proof that the allegedly illegal proceeds were derived from cocaine dealing and that the jury's verdict materially varied from the charged offense, meaning that he was convicted of conduct for which he was not properly indicted. Appellant's Br. at 24-25.

Defendant's argument based on *Getsy* fails because the panel opinion upon which he relies was vacated when the petition for rehearing on banc was granted on November 22, 2006. *Getsy*, 495 F.3d at 300. The en banc court rejected the panel's conclusion on which Musick relies. *Id.* at 307–08. Furthermore, contrary to defendant's arguments, we have held previously that "the acquittal of all but one co-conspirator during the same trial does not necessarily indicate that the jury found no agreement to act." *United States v. Crayton*, 357 F.3d 560, 565 (6th Cir. 2004). The jury's decision to acquit one co-conspirator may have been based upon lenity and is not an indication that the evidence against the remaining co-conspirator is insufficient. *See ibid*. Appellant's contention that the evidence that the proceeds came from cocaine was insufficient is without merit since there was overwhelming evidence of appellant's money-laundering activities. His contention that the

- 14 -

verdict materially varied from the charged offense also fails.


**C. Federal Rule of Criminal Procedure 16 and Alleged Prosecutorial Misconduct**

We review a district court's decision to admit or exclude evidence for an abuse of discretion. *See United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006). Findings of fact are reviewed for clear error; legal conclusions are reviewed *de novo*. *See ibid*.

Musick filed a series of motions under Federal Rule of Criminal Procedure 16(d)(2) to exclude late discovery provided between June 8 and June 26 for admission to his June 29 trial. The papers in question included real estate records for the Spring Creek Drive residence, which was the basis for the substantive money-laundering offense charged in Count Four. The papers in question also included Western Union records for money transfers by Lita Musick, which supported the money-laundering conspiracy count. At a hearing on June 24, the district court asked Assistant United States Attorney Smith if it should grant the defendant a continuance to deal with the documents or if the Government could proceed as scheduled with the evidence excluded. Smith told the court that the Government was ready to proceed to trial on June 29 without the evidence if it were excluded. On June 28, the district court ordered that all "late produced discovery by the Government . . . except for Brady or Jencks material contained in that disclosure and except for items that were previously received in the governments bates stamped disclosures prior to June 8, 2004, is excluded." On the morning of trial on June 29, AUSA Smith gave notice of appeal from the district court's order. The district court asked Smith why he should not be held in contempt for attempting to delay the trial. Ultimately, no sanction was issued because the judge determined that

AUSA Smith was merely "overwhelmed" with his duties and not acting in bad faith. The appeal of the district court's order divested the district court of jurisdiction pending resolution of the appeal.

On July 6, AUSA Smith dismissed the appeal and moved the district court to reconsider excluding the evidence because the case had been already continued pending that appeal. An opposition to reconsideration was filed, and the matter was argued. On July 21, a different AUSA, Guy Blackwell, appeared to handle the case, promised a prompt superseding indictment and timely compliance with discovery. The district court reversed its June 28 order excluding the evidence and allowed the excluded evidence to be used. No sanctions against AUSA Smith or the Government were ordered. Appellant was permitted to file a renewed motion to suppress, which was then denied on August 19, 2004. Ultimately, trial began on September 1, 2004, and the evidence was admitted.

Appellant contends in his appeal that AUSA Smith "used the pretrial notice of appeal as a pretext to force the district court to continue Musick's trial. [T]he pretext was designed for the government to gain a tactical advantage over Musick by avoiding the exclusion of evidence caused by AUSA Smith's violations of Rule 16(a)." Appellant's Br. at 28. Appellant contends that the district court incorrectly applied Rule 16(d)(2)(B) and (C) because the Government would always have the option of appealing an order excluding evidence under Rule 16, which would automatically create time for defense to receive and study the evidence, thereby mooting the district court's basis for excluding the evidence. Appellant's Br. at 29. "Allowing evidence after a continuance forced by a pretextual pretrial appeal results in 16(d)(2)(C) having no application to the Government." *Ibid*.

In determining whether suppression is the appropriate remedy for a discovery violation, the district court considers: (1) the reason for the delay in producing the materials, (2) the degree of

prejudice to the defendant, and (3) whether the prejudice can be cured with a less severe cause of action, such as granting a continuance. *See Ganier*, 468 F.3d at 927.

Appellant does not demonstrate any error in admitting the evidence other than appellant's policy arguments regarding Rule 16. Since the district court explained that its "full intent" had been to grant the appellant's counsel a continuance to deal with the belatedly-produced documents, and then admit the documents into evidence, the Government gained nothing from having to appeal and thereby forcing a continuance that the district court was already willing to grant. The appeal was made to correct AUSA Smith's error in stating he did not intend to use the documents at trial. It was not pretextual. Appellant demonstrates no prejudice from the continuance of the trial from June 25 to September 1, which gave him adequate time to study the discovery material.

Finally, there is no evidence of prosecutorial misconduct. The district court offered *sua sponte* to continue the trial so that appellant's counsel could study the records and cure the late discovery if Smith wanted to use the evidence at trial. AUSA Smith said he could proceed without the records. However, Smith later explained that he had been confused about the records in question. The district court found that a continuance to September 1 could cure the discovery error and that there had been no bad faith. The district court correctly concluded that there had been no Rule 16 violation and no bad faith because the Government had turned over the records to the defense as soon as they had been received.

### D. Speedy Trial Act and Sixth Amendment Speedy Trial Right

In the past, we have "applied two conflicting standards of review to Speedy Trial Act claims

– *de novo* and abuse of discretion." *United States v. Cope*, 312 F.3d 757, 776 (6th Cir. 2002). Most recently, we applied a de novo standard of review. *See Greenup v. United States*, 401 F.3d 758, 763 (6th Cir. 2005); *United States v. Garcia-Echaverria*, 374 F.3d 440, 445 (6th Cir. 2004). In this case, appellant loses under either standard.

The Speedy Trial Act mandates "that a defendant be brought to trial within seventy days from the date of arrest, the filing of the indictment or information, or the first appearance before the court, whichever is later." 18 U.S.C. § 3161(c). An indictment must be dismissed if a criminal defendant is not tried within the time allowed by the Act. 18 U.S.C. § 3162(a)(2). The Act, however, contains numerous provisions permitting the tolling of the 70-day period, including "delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant; . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; [and] . . . delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1). Under a catch-all provision of the same statute, delays due to continuances granted by the court are also excluded "if the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). The trial court must state on the record, orally or in writing, its reasons for granting such continuances. *Ibid*.

Appellant and eight codefendants were indicted on October 28, 2003. The last codefendant was arrested in Texas and made his initial appearance on February 9, 2004. The district court found

that the 70-day period to start appellant's trial began on February 9, 2004. On February 19, 2004, appellant filed twenty-three motions in the district court. These motions were resolved on May 3, 2004. The court found the period of time from February 19 through May 3 excludable. On May 18, Musick filed more motions, including objections to the May 3 rulings. Musick continued filing motions through June 2004, and the court held a series of hearings on these motions over several days at the end of June. The court excluded the time from May 18 through June 28, 2004, because "at all times during that period the defendant Gary Musick filed a stream of motions" up to and including the day of trial. The district court also excluded the period through July 8, 2004, during which its order excluding certain evidence was on interlocutory appeal. The court also excluded the time from July 8 through September 1, 2004, "due to the pending motions in regard to relevance and admissibility filed by the defendant." The court noted that Musick would be tried less than ten months from the date of his initial appearance and that the "vast majority of the delay in trying this case has been caused by the constant stream of repetitive motions filed by this defendant."

Appellant argues that the district court erred in not making findings that the period of delay from Musick's appearance to the appearance of the final codefendant (between November 19, 2003 and February 9, 2004) was reasonable. Appellant's Br. at 31. Appellant also argues the that Government should not benefit from delay caused by the alleged misconduct of AUSA Smith on June 29. *Id.* at 32.

Appellant's arguments are without merit. The Speedy Trial Act excludes a reasonable period of delay when a defendant is joined for trial with a codefendant as to whom the time for trial has not

run and no motion for severance has been granted. *See* 18 U.S.C. § 3161(h)(7); *Cope*, 312 F.3d at

776-77. Thus, the clock in this case began to run on February 9, 2004. The exclusion of time

required to address appellant's twenty-three pretrial motions filed in February 2004 and other pretrial

motions is expressly permitted under 18 U.S.C. § 3161(h)(1)(F). The exclusion of interlocutory

appeal time is expressly permitted under 18 U.S.C. § 3161(h)(1)(E). No continuances were granted

because of impermissible factors, such as congestion of the court calendar or failure to obtain

witnesses by the Government attorney. *See* 18 U.S.C. § 3161(b)(8)(C).[4] In sum, the total non-

excludable time that elapsed before appellant's trial began is 25 days, well within the limits of the

Speedy Trial Act.

Appellant also asserts violation of his Sixth Amendment right to a speedy trial. A district

court's adjudication of a constitutional speedy-trial claim is reviewed *de novo*. *United States v.*

*Gardner*, 488 F.3d 700, 719 (6th Cir. 2007).

In addition to a criminal defendant's rights under the Speedy Trial Act, the Sixth Amendment

guarantees "the right to a speedy and public trial." U.S. CONST. amend. VI; *see also Klopfer v. North*

*Carolina*, 386 U.S. 213, 223 (1967). Whether there has been a violation of the constitutional right

to a speedy trial is a fact-intensive inquiry requiring the balancing of "whether delay before trial was

uncommonly long, whether the government or the criminal defendant is more to blame for that delay,

---

[4]In a supplemental letter to this court, appellant cites *Zedner v. United States*, 126 S. Ct. 1976 (2006). However, the *Zedner* Court merely held that a district court judge may exclude time from the Speedy Trial Act time calculation, as permitted under 18 U.S.C. § 3161(h)(8), only if the judge makes findings on the record that the continuance serves the "ends of justice." Such findings are not required for exclusions of time made under 18 U.S.C. § 3161(h)(1).

whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). A one-year delay between accusation and the beginning of trial is generally considered "presumptively prejudicial." *Doggett*, 505 U.S. at 652 n.1. We have previously held that a nearly nine-month delay was not presumptively prejudicial in a case involving two defendants and eleven counts relating to multiple allegations of attempted murder. *See Cope*, 312 F.3d at 778; *see also Gardner*, 488 F.3d at 719 (finding nine-month delay not presumptively prejudicial).

In this case, Musick's trial began ten months after his indictment. Given that the case involved eight codefendants, with appellant ultimately being tried jointly with one codefendant, and several conspiracy and substantive counts, we hold that the delay in this case is not presumptively prejudicial. Delays several months short of one year are not "uncommonly long," especially in cases involving multiple defendants and numerous pretrial motions. *See Gardner*, 488 F.3d at 719. Moreover, even if there were prejudicial delay sufficient to trigger a full inquiry, the fact that the defendant's vigorous motion practice was the main cause of delay weighs against finding a Sixth Amendment violation. The other factors outlined in *Doggett* also weigh against finding a violation here.

### E. Administrative Seizures

We review a district court's decision to admit or exclude evidence for an abuse of discretion. *See Ganier*, 468 F.3d at 925. Findings of fact are reviewed for clear error; legal conclusions are reviewed *de novo*. *See ibid*.

Musick challenges the administrative seizure of an Escalade and a Volvo while the cars were parked at an auto shop and the seizure of a Navigator from a public street. He also challenges the resulting searches, which were warrantless and not made incident to an arrest. Evidence gathered during the seizures was used to obtain search warrants for two of Musick's residences, to identify and obtain bank records, and to generate other evidence. Musick argues that agents lacked probable cause to search and seize the vehicles. Appellant's Br. at 38. He also argues that the vehicles were not contraband and, therefore, not subject to seizure. *Id*. at 39. Moreover, appellant argues that civil forfeiture applies to vehicles only and not any papers found in such vehicles and that the DEA's inventory of items in the vehicle was pretextual and unnecessary since other persons were present to take possession of personal property found in the vehicle. *Id*. at 41.

All "conveyances, including . . . vehicles . . . which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of controlled substances are subject to forfeiture. 21 U.S.C. § 881(a)(4). The seizure of such property must be effected in the manner set forth in 18 U.S.C. § 981(b). *See* 21 U.S.C. § 881(b). Section 981(b) requires that seizures shall be made pursuant to a warrant unless "there is probable cause to believe that the property is subject to forfeiture and the seizure is made pursuant to a lawful arrest or search or another exception to the Fourth Amendment warrant requirement would apply .

. . ."  18 U.S.C. § 981(b)(2)(B).

Inventory searches undertaken pursuant to standard police procedures are reasonable. *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976).  The Court has limited such inventories, however, holding that it was unreasonable for a state police trooper to open a locked suitcase found in a trunk where there was no policy with respect to opening closed containers found during inventory searches. *Florida v. Wells*, 495 U.S. 1, 5 (1990).  However, where a vehicle is subject to forfeiture, an inventory and search may be reasonable even where no warrant has been issued and no probable cause to search for contraband in the vehicle has been established.  *See Cooper v. California*, 386 U.S. 58 (1967) (discussed in *Opperman*, 428 U.S. at 373).  We have applied *Cooper* and joined those circuits that have found that pre-forfeiture inventories do not require warrants.  *United States v. Decker*, 19 F.3d 287, 290 (6th Cir. 1994) (quoting *United States v. Pace*, 898 F.2d 1218, 1244-45 (7th Cir. 1990) ("once a vehicle is validly seized for forfeiture, it can be searched *at will*, without a warrant")).

In this case, DEA Special Agent Templeton pursued the forfeiture of the vehicles after a consensual search of Serna's home led Templeton to discover Duarte and Serna's drug ledger. appellant's name was in the ledger.  Templeton concluded that he had probable cause to believe that appellant's cars were likely purchased with drug proceeds.  Based upon a tip, the Escalade was discovered at Wayne's Upholstery; it and appellant's Volvo were seized when appellant arrived to pick up the Escalade.  Templeton conducted an inventory of the vehicles' contents and seized several receipts for work done on the Escalade and for rent paid for an apartment in Baneberry, Tennessee.

After learning that defendant claimed ownership of the Navigator and that Lita Musick held that car's title and had attempted to pay for the vehicle in cash, Templeton directed two police officers to conduct a stop of the Navigator on a public street. From the Navigator, Templeton seized a receipt for $15,000 for tile work being done in appellant's home. *See supra* note 2.

The district court found that the administrative seizures of the vehicles were authorized under the statute. "Based upon the expensive nature of these vehicles, Musick's total lack of reported income, and the ledger implicating Musick in large scale drug deals," the court found that probable cause existed to believe the vehicles were subject to forfeiture. The court also noted that the Fourth Amendment does not require police to obtain a warrant before seizing an automobile from a public place when they had probable cause to believe that it was forfeitable contraband. *See Florida v. White*, 526 U.S. 559, 566 (1999).

The district court's factual findings are not in clear error; nor is the legal analysis incorrect. Probable cause to seize the vehicles existed, and the resulting inventories were lawful. Police may search a vehicle without a warrant if they have probable cause to believe it contains contraband. *See White*, 526 U.S. at 564. Moreover, even if the police lack probable cause to believe a car contains contraband, they may seize the car if they have probable cause to believe the car itself is contraband. *See ibid*. The seizure of a vehicle on a public street or "other open places" does not involve any invasion of privacy. *See id.* at 566. Musick provides no support for his argument that Agent Templeton was precluded from conducting an inventory search of the vehicles after they were seized. Appellant does not argue that the receipts were in closed containers or otherwise outside of plain

view. Appellant's arguments about the probable cause requirement for making a traffic stop and the plain-view rule are irrelevant to the forfeitures at issue here. Appellant has not demonstrated any bad faith or that Templeton was acting "for the sole purpose of investigation." *See Colorado v. Bertine*, 479 U.S. 367, 372-73 (1987). Finally, it should be noted that none of the documents found in the vehicles were introduced at trial. Appellee's Br. at 43.

## F. Suppression of Evidence

When reviewing a district court's denial of a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*. *Abboud*, 438 F.3d at 568.

Before trial, Musick filed multiple motions for a Rule 12(b)(4)(B) notice from the Government of the evidence and exhibits it intended to present as part of its case-in-chief. The district court found that, as of March 18, 2004, appellant had been provided with notice that the Government planned to introduce two tapes of wire taps against him. The district court extended the deadline for appellant to file suppression motions through March 22, 2004. Appellant filed nothing at that time, not even a request for an additional extension. Appellant instead continued to assert that he would not file suppression motions until he had received further disclosure from the Government.

A magistrate judge had denied appellant's requests for more specific disclosures from the Government regarding the evidence it intended to present in its case-in-chief. On June 8, the district court overruled the magistrate judge and required the government to provide appellant with "notice

of those items that it contemplates using in its case in chief" by June 10. The court then gave appellant until June 17, 2004, to file additional motions necessitated by the Government's Rule 12(b)(4)(B) designation of exhibits.

The government provided the requisite disclosures on June 10, and appellant's counsel then filed numerous motions to suppress, culminating in a series of motions filed on June 17 and 18. On June 29, the district court held that Musick had waived his motions to suppress evidence found during searches of his residences and certain wiretaps. The court noted that it had extended time for appellant to respond to new Rule 12(b)(4)(B) disclosures, but that it had not extended time for filing motions to suppress evidence. The court found that Musick's motions to suppress were filed some eight months after the searches were executed and that his motions stated that he could not contend that the searches were illegal in any way because "counsel has been unable within the motions deadline to particularize a motion for suppression for evidence" because the Government had not made sufficient Rule 12(b)(4)(B) disclosure. The court found that Musick had "everything that he needed to challenge the searches in question by March 8, 2004. . . . The defendant sought and obtained an extension of time up to March 22, 2004, to identify which of these tapes he would challenge. However, he filed nothing." The court rejected as "ridiculous" Musick's contention that he could not file a motion to suppress until he had received notice of which evidence the Government intended to use at trial. Finding the motions to suppress untimely, the court found that appellant had not shown good cause for missing court-imposed deadlines and deemed the objections waived, citing *United States v. Kincaid*e, 145 F.3d 771, 778 (6th Cir. 1998). Nevertheless, the court

addressed the lawfulness of the searches and concluded they were lawful.

Rule 12(b)(4)(B) states that at the arraignment or as soon afterward as practicable, the defendant may, in order to file suppression motions, "request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to under Rule 16." FED. R. CRIM. P. 12(b)(4)(B). The defendant is required to make any suppression motions before trial. *See* FED. R. CRIM. P. 12(b)(3)(C). A party is deemed to have waived any such pretrial motion if he fails to raise it "by the deadline the court sets," provided that "[f]or good cause, the court may grant relief from the waiver." FED. R. CRIM. P. 12(e). We are generally precluded from reaching the merits of challenges to a district court's rulings on timeliness of pre-trial motions. *See Kincaide*, 145 F.3d at 778 (analyzing Rule 12(f), the previous codification of Rule 12(e)).

In this case, there is no reason to upset the district court's finding that appellant missed deadlines and had not shown good cause for doing so. The district court is correct that additional disclosures were not necessary for appellant to challenge the legality of the searches of his residences once all of the supporting affidavits and search warrants were provided to him. Moreover, the district court actually addressed appellant's suppression arguments. Of course, the fact that the district court "saw fit to rule on the merits of [defendant's] motion, despite its untimeliness, does not save defendant from waiver of the grounds stated in the motion." *United States v. Obiukwu*, 17 F.3d 816, 819 (6th Cir. 1994). The district court itemized over 200 rulings on appellant's various pending motions and/or objections. Given this exhaustive treatment of appellant's motions to suppress, there is no point served in remanding the question of whether evidence should have been suppressed as

appellant requests.

## G. Bill of Particulars

We review a denial of a request for a bill of particulars for an abuse of discretion. *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993). To make a successful challenge to a district court's denial of a motion for a bill of particulars, "the defendant must show not only that the court abused its discretion, but that defendant actually suffered surprise or other prejudice at trial." *United States v. Salisbury*, 983 F.3d 1369, 1375 (6th Cir. 1993).

Pursuant to Rule 7(f), Musick moved for a bill of particulars for Counts One, Two, and Three, charging conspiracy to distribute cocaine, distribute marijuana, and launder money, respectively. Musick requested that the bill disclose, among other items, any uncharged acts the Government would offer at trial; names of known but unnamed co-conspirators; places other than the Eastern District of Tennessee where acts the Government intended to offer as proof were committed; the date, place, and nature of each act of any co-conspirator and appellant done in furtherance of the conspiracy; and the basis for any sentencing enhancements the Government might seek. The magistrate judge and the district judge denied the motion.

Rule 7(f) states that "the defendant may move for a bill of particulars." FED. R. CRIM. P. 7(f). The purpose of a bill of particulars is to inform the defendant of the charges against him "if this is necessary to the preparation of the defense, and to avoid prejudicial surprise at the trial." 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE & PROCEDURE § 129 (3d ed. 1999); *see United States v. Birmley*,

529 F.2d 103, 108 (6th Cir. 1976). Thus, the test in ruling on a motion for a bill of particulars is whether providing such details is necessary to the preparation of the defense and avoidance of prejudicial surprise. *See* FEDERAL PRACTICE & PROCEDURE § 129. The bill of particulars is not intended as "a means of learning the government's evidence and theories." *Ibid.* A defendant is not entitled to a bill of particulars if the purpose of the bill is to obtain a list of the Government's witnesses or to discover all of the overt acts that might be proven at trial. *See United States v. Largent*, 545 F.2d 1039, 1043 (6th Cir. 1976); *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1976). Nor is the Government required to furnish the names of all other co-conspirators. *See United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004).

In this case, the district court found that the indictment provided sufficient information regarding who purchased, delivered, stored, and distributed the cocaine and marijuana and the persons involved in the alleged money-laundering conspiracy and the source of the funds to be laundered. Two specific acts were detailed in Counts Four and Seven. In addition, the Government had provided Musick with significant discovery, including 11 audio tapes, 14 video tapes, and 649 documents. The court also found that the search warrant affidavits provided Musick "with a wealth of details of the charges against him." The court concluded that "the material available to the defendant, when viewed in totality, adequately provides the defendant with information about the details of the charges against him necessary to the preparation of his defense, prevents prejudicial surprise at trial and precludes a second prosecution for the same crimes" and denied the motion. The court also noted that appellant's motion consisted of six pages of interrogatories, which the court

determined were designed to effect additional discovery of the Government's evidence and case.

Appellant's argument is meritless. First, he does not allege any prejudice resulting from the denial of his motion. Second, the indictment set out the names of all indicted co-conspirators, the relevant dates of the conspiracies, the means and methods of the conspiracies, and, where required, the overt acts in furtherance of the conspiracies. As such, it was sufficient. Third, as the district court found, Musick received access to all of the pertinent information necessary to prepare his defense and avoid unfair surprise. Accordingly, the district court did not abuse its discretion in denying the motion for the bill.

## H. Admission of Testimony About Pre-Arrest Searches

We review a district court's decision to admit or exclude evidence for an abuse of discretion. *See Ganier*, 468 F.3d at 925. Findings of fact are reviewed for clear error; legal conclusions are reviewed *de novo*. *See ibid*.

Musick contends that the district court erred in the admission of Hamblin County Detective Hayes's testimony. Appellant's Br. at 52-53. Hayes testified about a search of Musick's grandparents' trailer on January 31, 1998, when Musick was seventeen. Hayes testified that he found a 16-gauge shotgun and an assault rifle in what he believed to be appellant's bedroom closet, as well as a small red cooler containing $3,500 in cash, baggies, two small bags of drugs, a speeding ticket issued to appellant, and various scales. Hayes also testified that he searched Lita Musick's residence on December 23, 1999, and found clothing, $42,800, a small amount of marijuana, a receipt for

digital scales, gambling tickets, and a Ruger .357 magnum. Finally, Hayes testified that the officers sought to search the residence of Musick's girlfriend, Heather Mann. He explained that Mann consented to the search, and that the search discovered a green laptop computer, five gambling tickets, and a small amount of cash.

Appellant objected during trial to the introduction of Hayes's testimony on the grounds that it was hearsay, irrelevant, and unduly prejudicial. The district court overruled the objections. Musick then renewed his objection in the form of a motion for mistrial. The district court ruled from the bench that the guns were relevant evidence of drug trafficking and could be received as evidence in a drug distribution case. *See United States v. Gahagan*, 865 F.2d 1490, 1499 (6th Cir. 1989). The district court also found that the testimony was not unduly prejudicial since the guns themselves were not offered into testimony and considering Hayes's testimony in the context of all of the evidence presented at trial. In response to a motion for a new trial, the district court rendered a written opinion on December 2, 2004, again denying appellant's objections to Hayes's testimony.

The court did grant appellant's motion to prevent Hayes from testifying about stolen merchandise found on the property. During testimony, Hayes stated that officers had found several items of new merchandise in appellant's bedroom during the 1998 search of the trailer. Appellant's counsel objected; the court sustained the objection and instructed the Government to move on. The stolen merchandise again came up during cross-examination. During the jury charge, the court instructed the jury to disregard any testimony as to stolen merchandise.

Musick now argues that the admission of Hayes's testimony was error. Musick argues that

the Government had represented that it would not offer any Rule 404(b) evidence, that the Government had failed to provide Rule 12(b)(4)(B) notice of the items Hayes would describe, that the testimony about guns and stolen merchandise was irrelevant, and that Hayes's testimony about relationships of persons at Musick's grandparents' trailer was hearsay and violated Musick's constitutional right to confront witnesses against him. Appellant's Br. at 56-61.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." FED. R. EVID. 404(b). Evidence of guns being located at a defendants' residence directly supports the charge of conspiring to distribute and to possess with intent to distribute drugs. *See United States v. Ware*, 161 F.3d 414, 417-18 (6th Cir. 1998). "Such evidence is not evidence of other crime or wrong, but of involvement in the cocaine conspiracy at issue." *Id*. at 418.

In the instant case, Rule 404 was similarly not violated by the testimony about the guns. The guns were relevant, and the district court's ruling that the testimony was not overly prejudicial was not an abuse of discretion. Similarly, the judge's curative instruction regarding Hayes's brief mention of the stolen merchandise was sufficient.

Musick's *Crawford* objection is also meritless. *See Crawford v. Washington*, 541 U.S. 36 (2004). Musick argues that his right to confront witnesses was violated by Hayes's testimony that (1) Musick is the grandson of Louise and Leroy Wilson, (2) during the 1998 search of the trailer,

Louise Wilson said she did not use the bedroom where the evidence was found, (3) Heather Mann was defendant's girlfriend, and (4) Hayes was searching for stolen merchandise and drugs. This argument is meritless. Hayes's testimony that Musick was the Wilsons' grandson was based on personal knowledge, and he was available for cross-examination. The district court sustained the objection to Hayes's testimony that Louise Wilson told him the bedroom was not hers. Hayes's testimony that Mann was Musick's girlfriend was also based on personal knowledge; moreover, the court found this statement was offered not for the truth of the matter asserted, but merely explained why Hayes obtained a warrant to search Mann's apartment. Hayes's statement that he was searching for drugs and stolen merchandise was admitted only after defendant had asked him if he was conducting a gambling raid when he searched Lita Musick's house in 1999. These rulings were not an abuse of discretion and did not constitute violations of appellant's Confrontation Clause rights.

### I. Rule 16 Discovery and *In Camera* Review of Summaries of Witness Statements

Before trial, appellant made several requests for disclosure under Rule 16 of the Federal Rules of Criminal Procedure. The magistrate judge ordered the Government to disclose impeachment material to appellant in time for trial. Appellant argued that statements of witnesses to Government investigators are documents that are discoverable under Rule 16(a)(1)(E). The magistrate judge disagreed, noting that such statements are not discoverable pursuant to Rule 16(a)(2). After appellant objected to this ruling, the district court adopted and affirmed the magistrate judge's order. In his briefs to this court, appellant asks us to hold that items listed in Rule

16(a)(1)(E) that are not otherwise excluded from discovery in Rule 16(a)(2) are discoverable. Appellant's Br. at 63. We decline to do so for several reasons.

First, we may well be without jurisdiction to entertain this argument. Appellant identifies no document produced at trial that, if received pre-trial, might have been used in the preparation of his defense. Thus, he has not shown any injury from the alleged error.

Second, even assuming appellant has stated a live controversy upon which this court may rule, his claim is without merit. In *United States v. Presser*, this court held that neither *Brady*, *Giglio*, nor Rule 16 gives a defendant the right to broad pre-trial discovery of impeachment evidence, the disclosure of which is instead controlled by the Jencks Act, 18 U.S.C. § 3500. *See* 844 F.2d 1275, 1282-85 (6th Cir. 1988). According to *Presser*, "so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial, we fail to see how the Constitution is violated." *Id*. at 1283. The Jencks Act states, "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a).

In this case, the Jencks Act limits discovery of witness statements made to investigating agents. The district court ruled correctly that disclosure of such statements could not be compelled. The Government was ordered to produce exculpatory material in time for defendant's use at trial. This order was correct. Moreover, because appellant has not pointed to any injury from this ruling

nor to any specific evidence actually admitted at trial, his objection seems to call for an advisory opinion about the meaning of Rule 16. To the extent this is true, appellant's argument is not cognizable.

Musick also appeals the district court's decision not to review certain summaries of witness statements *in camera*. The first day of trial, the district court denied appellant's request under Rule 26.2 for production of DEA investigative reports of interviews with Duarte and Serna. The district court also denied appellant's request that the court review the reports *in camera* to determine whether they contained *Brady* material.

Since Rule 26.2 was intended to provide a counterpart to the Jencks Act, any cases interpreting a provision of the Jencks Act should be applicable to a similar provision of Rule 26.2. *See* FED. R. CRIM. P. 26.2(a) advisory committee's note. Under the Jencks Act, the Government's notes from an interview must be produced only if they were read back to and verified by the witness and if the report summarized the notes without material variation. *See United States v. Williams*, 921 F.2d 1218, 1224 (6th Cir. 1992). An agent's report does not count as a "statement" for the purposes of the rule where the witness does not adopt it. *See United States v. Nathan*, 816 F.2d 230, 236-38 (6th Cir. 1987). Review *in camera* is not required if the Government advises in good faith that reports do not contain *Brady* material. *See United States v. Hernandez*, 31 F.3d 354, 360-61 (6th Cir.), *cert denied*, 513 U.S. 912 (1994). Finally, the Supreme Court has held that Jencks Act violations may be subject to the harmless error rule. *See Rosenberg v. United States*, 360 U.S. 367 (1959). We have applied harmless error analysis to Rule 26.2 errors, stating that the "critical issue

is whether the failure to furnish the statement itself caused any actual prejudice to the defense in the context of all the circumstances of the trial." *United States v. Webster*, No. 89-6476, 1990 WL 136117, at *3 (6th Cir. Sept. 20, 1990) (citing *Goldberg v. United States*, 425 U.S. 94 (1976)).

In this case, the district court correctly applied the law. According to the district court, appellant conceded that there was "nothing to suggest that the reports were ever reviewed and/or adopted by any witness." Therefore, the reports did not fall under Rule 26.2. The court also noted that the Government had been made aware of its *Brady* obligation and had represented that the reports did not contain any such material. Moreover, even assuming that the district court erred, the error here is harmless. Appellant cannot demonstrate any actual prejudice. During the trial, appellant cross-examined Duarte and Serna. Appellant asked both about their interviews with DEA Special Agent Templeton and uncovered no information that Templeton's notes contained impeachment information. Absent actual prejudice, any error was harmless.

## J. Rule 611

Appellant argues that the district court abused its discretion in overruling objections to the scope of the Government's cross-examination of Lita Musick.[5] Appellant's Br. at 65-66. Appellant argues the court improperly applied a relevance standard rather than limiting cross-examination to

---

[5]Appellant's original briefing accidentally omitted the heading and introductory paragraphs of this argument. On the day the case was set for oral argument, appellant filed a motion to "correct scribner's [sic] error" by filing a supplemental brief containing the complete argument. Because the omission was not material and did not prevent us from understanding or fully considering appellant's argument, the motion is denied.

the subject matter of direct examination. *See* FED. R. EVID. 611(b).

We review the district court's decisions as to cross-examination for abuse of discretion. *See* FED. R. EVID. 611(b); *United States v. Askarov*, 299 F.3d 896, 898 (2002). "Under Rule 611, a trial judge has considerable discretion and a judge's ruling will not be the basis for reversal of a criminal conviction unless a defendant's substantial rights are affected." *United States v. Moore*, 917 F.3d 215, 222 (6th Cir. 1990), *cert. denied*, 499 U.S. 963 (1991).

Rule 611(b) states: "Cross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." The "subject matter of the direct examination" has been liberally construed to include all inferences and implications arising from such testimony. *See Moore*, 917 F.3d at 222.

Appellant repeatedly objected to the Government's cross-examination of Lita Musick as being outside the scope of direct examination. On each occasion, the district court ruled that the questions were permissible, finding that they were either within the scope of direct or were material to the witness's credibility. Lita Musick had been asked on direct examination about the 1998 arrest and juvenile detention of appellant. It was not an abuse of discretion for the district court to allow cross-examination about the details of that arrest, including questions about the evidence discovered during the 1998 search of the trailer that led to appellant's detention. Appellant did not testify, relying instead on Lita Musick's testimony that he was a hard-working young man whom she did not know to be involved with drugs. The Government's questioning was designed to probe her

knowledge of her son's drug activities and to impeach her credibility. The district court did not

abuse its discretion in this case.

## K. Jury Instructions

"This court reviews jury instructions as a whole to determine whether they fairly and

adequately inform the jury of relevant considerations and explain the applicable law to assist the jury

in reaching its decision. Trial courts have broad discretion in drafting jury instructions, and we

reverse only for abuse of discretion. We will not reverse the trial court unless the jury charge fails

accurately to reflect the law. We may reverse a judgment based on an improper jury instruction only

if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v.*

*Prince*, 214 F.3d 740, 761-61 (6th Cir. 2000) (internal quotation marks and citations omitted).

Appellant requested an instruction to the jury that it could not consider the evidence

presented regarding the 1998 search of appellant's grandparents' trailer unless the jury found beyond

a reasonable doubt that acts on January 31, 1998, were (1) committed by Musick, (2) constituted a

crime involving cocaine, and (3) were done by Musick as an act during the course, and in

furtherance, of the conspiracy charged in Count One. Appellant also requested an instruction that

the jury could only consider evidence that he had been arrested twice in 2000 for selling cocaine if

it similarly found beyond a reasonable doubt that such acts were part of the charged conspiracy. In

addition, appellant requested a "buyer-seller instruction" regarding the 2000 incidents and now

argues that the district court should have given different instructions on single/multiple conspiracies

and should have required a special verdict. Appellant raises the district court's failure to include such instructions as error. Appellant's Br. at 69-72.

"[A] district court's refusal to give a specific instruction warrants reversal only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Jamieson*, 427 F.3d 394, 414 (6th Cir. 2005) (quotation marks omitted). In this case, the district court's failure to include appellant's proposed instructions was not error for several reasons.

First, the district court correctly instructed the jury that the testimony about the 1998 and 2000 incidents "was offered as proof that those acts were in furtherance of the conspiracy charged in this indictment. You may not consider these things for any other purpose against Gary Musick." The district court then explained those elements the jury was required to find beyond a reasonable doubt in order to convict appellant. Appellant's proposed instruction is incorrect because the jury is not required to find beyond a reasonable doubt that the evidence from the trailer constituted the crime of possession of cocaine before it could consider that evidence as showing appellant's participation in the charged conspiracy.

Second, appellant's request for a "buyer-seller" instruction was properly denied. The district court found that such an instruction was not warranted where the jury could reasonably find appellant was buying large quantities of cocaine from Duarte on a continuing basis as part of the charged conspiracy. The Government's case did not rely on a series of intermittent transactions involving

small amounts of drugs, the situation in which a so-called "buyer-seller" instruction is most apt.

Moreover, a conviction will not be reversed for failure to give a buyer-seller instruction where the

district court gave complete instructions on the elements of conspiracy, as was done in this case. *See*

*Riggs v. United States*, 209 F.3d 828, 833 (6th Cir. 2000).

Third, the district court's instructions adequately explained to the jury that the 2000 incidents

should be considered only as acts of the conspiracy and carefully explained the elements of the

conspiracy.

Fourth, no instruction naming specific co-conspirators was required. Appellant argues that

the jury could not convict based on conspiracy with an undercover agent. While true, this case did

not involve a conspiracy between appellant and merely one other person, who was a government

agent. Rather, the conspiracy involved multiple other persons with whom it was legally possible for

appellant to conspire. Therefore, no instruction was required. *See United States v. Hayden*, 68 F.

App'x 530, 532 (6th Cir. 2003) (discussing *United States v. Pennell*, 737 F.2d 521, 536 (6th Cir.

1984)). The district court used this circuit's pattern jury instruction regarding conspiracies and

included the names of the charged coconspirators stated in the indictment.

Fifth, the district court used this circuit's pattern jury instruction regarding single versus

multiple conspiracies. In his briefing before this court, appellant objects to the district court's

characterization of his argument in the instructions given to the jury. Appellant's Br. at 72-73.

Those instructions stated:

> The defendant Gary Musick argues that there were really multiple conspiracies
> involved in this case. To convict either one of the defendants of the conspiracy

> charged, the government must convince you beyond a reasonable doubt that the defendant was a member of the conspiracies charged in the indictment. If the government fails to prove this, then you must find that defendant not guilty of the conspiracy charges, even if you find that he or she was a member of some other conspiracy.

However, appellant had stated as much during closing arguments when his counsel told the jury, "It is our position, and we argue to you, that because there are multiple conspiracies, the government has tried to put together a series of unsupported conspiracies that reach back to that 1998 juvenile whatever happened . . . ."

Finally, the denial of the request for special verdicts was not an abuse of discretion. Special verdicts are disfavored in criminal trials, because they invade the special province of the jury. *See United States v. Blackwell*, 459 F.3d 739, 766-67 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 1336 (2007). There is no authority for the proposition that failure to ask the jury to return a special verdict constitutes reversible error. *See ibid*. As in *Blackwell*, appellant's concerns about the single versus multiple conspiracies issue was adequately addressed via other instructions. Appellant's argument that a special verdict would have assisted in his preparation of an appeal is irrelevant. Appellant's Br. at 73.

Appellant's remaining argument is that the instruction regarding Count Three was in error because it enabled the jury to find him guilty of the conspiracy to launder money based on any unlawful conduct. This argument too is meritless. The district court's instructions clearly stated that the jury could convict as to Count Three only if the Government proved beyond a reasonable doubt that "the conspiracy described in the indictment was willfully formed." The instruction explicitly

limited the jury to considering appellant's drug dealing as the source of the laundered money.

## L.  Reasonableness of Appellant's Sentence

Appellant was sentenced on January 21, 2005, nine days after the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005).

The Presentence Investigation Report (PSR) was prepared on November 15, 2004.  Using the 2003 version of the Sentencing Guidelines, the PSR calculated a base offense level of 24 for his conviction on Counts Three, Four, and Seven regarding money laundering.  A two-level enhancement applied because appellant was convicted under 28 U.S.C. § 1956.  *See* USSG §2S1.1(b)(2)(B).  Counts Three, Four, and Seven were grouped together as provided under USSG §3D1.2(c).  The PSR calculated a base offense level of 24 for appellant's conviction of conspiracy to distribute and possession with intent to distribute a quantity of cocaine.  Because appellant qualified as a career offender under USSG §4B1.1, appellant's conduct resulted in a total offense level of 34.

In calculating appellant's criminal history points, the PSR added two criminal history points for a juvenile conviction to seven points for adult convictions for a total of nine criminal history points.  Three more points were added for committing the instant offense while on probation and within two years of his release from custody, yielding a total of twelve criminal history points and placing defendant in Category V.  However, as a career offender, the criminal history category was raised to Category VI.  Based on a total offense level of 34 and a criminal history category of VI, the

PSR calculated a guidelines range of 262 to 327 months of imprisonment.

In response to objections to the PSR, and because this case was the court's first post-*Booker* sentencing, the district court issued a written sentencing opinion on January 21, 2005, explaining how sentencing would proceed. In its written sentencing memorandum, the district court explained its understanding of *Booker* as making the Sentencing Guidelines "effectively advisory." The court stated that it "must decide, on a case by case basis, what sentence is reasonable in the case based upon a consideration of the otherwise applicable guidelines range as well as the other statutory factors which are set forth [in 18 U.S.C. § 3553(a)]." The court concluded that "in exercising its discretion in imposing reasonable sentences, the Court will afford significant weight to the range of imprisonment recommended by the guidelines but will deviate from those guidelines where there exist clearly identifiable and persuasive reasons consistent with the statute for doing so. In those cases where the court deviates from the applicable guideline range, the Court will explain on the record its reasons for doing so."

In its written opinion, the district court sustained Musick's objection to being classified as a career criminal and found that his total criminal history points should be four instead of twelve. The court noted that, under USSG §4A1.2, criminal history points are assessed for "prior sentences," meaning "any sentence previously imposed . . . for conduct not part of the instant offense." USSG §4A1.2(a)(1). The court reasoned that the PSR, therefore, had improperly counted eight criminal history points based on convictions and conduct that had been introduced as acts in furtherance of the conspiracy charged in this instant case. The court did count four points for convictions for

conduct not introduced as part of the charged conspiracy, and appellant was placed in criminal history Category III.

In addition, while the PSR had calculated an offense level of 34, the district court arrived at different offense levels. For the money-laundering convictions, the court started with a base offense level of 8, to which it added 16 levels based on the value of the funds involved, 6 levels because the funds were proceeds from distribution of a controlled substance, and 2 levels for violation of § 1956, yielding a total offense level of 32. Applying an offense level of 32 and the criminal history category of III, the court calculated a guidelines range of 151 to 188 months. The court did not recalculate the cocaine conspiracy offense level at this time, because the court believed that the money-laundering offense level was the higher level.

At the sentencing hearing held on February 28, 2005, the court found by a preponderance of the evidence that the least amount of cocaine for which appellant is responsible is 15 kilograms. This amount of cocaine yields a base offense level of 34. The court erroneously commented that it was adding the two-level enhancement for being convicted under § 1956, even though that enhancement pertains to money laundering convictions and not drug convictions, to arrive at the level of 34. Although the court's calculation seems in error (a proper 2-level enhancement would have resulted in a level of 36), the actual result was correct: an offense level of 34 was used, and that is the appropriate offense level solely for conspiring to distribute between 15 and 50 kilograms of cocaine. Of course, the court was contradicting its earlier assertion in its written memorandum that the money-laundering offense levels would control since they were higher. Now that the court had

calculated a drug conspiracy level of 34, that offense level controlled because it was higher than the offense level of 32 for money laundering that the court had calculated in its written memorandum.

At the hearing, the final calculation stated by the court yielded a guideline range of 188 to 235 months, which is the correct range given an offense level of 34 and a Category III criminal history. After considering the factors in § 3553(a), the district court imposed a final sentence of 235 months of imprisonment for Count One and 235 months of imprisonment for Counts Three, Four, and Seven, the sentences to run concurrently.

Appellant challenges his sentence on numerous grounds.[6] First, he argues that the judge erred in according "significant weight" to the Guidelines and requiring Musick to "establish clearly identifiable and persuasive reasons" for any departure. Second, he argues that the district court improperly considered acquitted conduct in finding that Musick had conspired to distribute 15 to 45 kilograms of cocaine. Third, he argues the district court violated *Blakely* and *Apprendi* by finding facts not established by the jury's verdict. Finally, Musick argues that the district court's sentence was unreasonable because it was far higher than the 15 to 21 month range appellant believes was more appropriate. Appellant's Br. at 75-81. Appellant's claims are without merit.

---

[6]On the day of oral argument in this case, appellant filed two motions regarding his sentence. First, appellant moved for "leave to consolidate appellant's sentencing issue pertaining [sic] acquitted conduct with en banc proceedings in *United States v. White*." This motion is procedurally irregular since it was made before this panel had even issued this decision; therefore, the motion is denied. Of course, appellant may now petition this court for rehearing of his appeal *en banc*. Second, appellant moved for resentencing because he has recently learned that the Government provides individuals who plead guilty with "undisclosed sentencing benefits not authorized by the U.S.S.G. 5k1.1." Appellant's motion consists merely of vague allegations of impropriety regarding Duarte and Serna's sentencing. The motion is denied.

The district court's statement of the impact of *Booker* accords with this circuit's subsequently developed case law. The district court properly recognized that the Guidelines were "effectively advisory" and then considered the § 3553(a) factors. The district court's statement that it accorded substantial weight to the Guidelines range was not error. It is true that district courts may not treat the Guidelines range as being "per se reasonable" or accord the Guidelines range an irrebuttable presumption of reasonableness. *See United States v. Buchanan*, 449 F.3d 731, 734 (6th Cir. 2006). However, that is not what the district court did in this case. The court accorded "significant weight" to the Guidelines sentence and then stated it would do exactly what it should: deviate from the guidelines when presented with persuasive reasons for doing so. *See Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007) (explaining both the "key role" of the Sentencing Commission in formulating the Guidelines, which are the "initial benchmark" of a sentence, and the sentencing judge's ability to vary from the Guidelines when presented with reasons to do so under § 3553).

Here, the district court's sentence was procedurally and substantively reasonable. A sentence is procedurally unreasonable if the district court fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a). *See United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007). A sentence is substantively unreasonable "when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Ibid*.

In this case, Musick's sentence of 235 months of imprisonment is within the properly calculated guidelines range; therefore, we may, and do, credit the sentence with a presumption of

reasonableness. *See United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). The district court sustained some of appellant's objections to the PSR and disagreed with the PSR's calculation of the sentencing range of 262 to 327 months of imprisonment. The court's own calculation yielded a range of 188 to 235 months of imprisonment. The district court considered the Guidelines range it calculated and the § 3553(a) factors. The district court did not accord an unreasonable amount of weight to any factor, as it carefully addressed each factor and described the weight it accorded to each.

To the extent Musick challenges the court's failure to depart from the Guideline sentence, his argument is not reviewable, since the district court clearly understood that the Guidelines were merely advisory and was aware of its discretion to depart. *See United States v. Puckett*, 422 F.3d 340, 345 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1935 (2006).

Finally, the district court's finding of facts by a preponderance of the evidence is perfectly lawful. First, Musick was not acquitted of the cocaine conspiracy charge; he was found guilty of conspiring to distribute a lesser amount of cocaine than was charged. Second, district courts may properly find facts at sentencing by a preponderance of the evidence. *See United States v. Brika*, 487 F.3d 450, 458-60 (6th Cir. 2007) (explaining that conduct on which jury rendered a judgment of acquittal or failed to reach a verdict may be considered by a sentencing judge). In this case, the court's finding by a preponderance of the evidence that the drug conspiracy involved 15 to 45 kilograms of cocaine was not a finding based on acquitted conduct; therefore, the issue of whether sentencing judges may find facts based on so-called "acquitted conduct" is not presented. *Cf. United*

No. 05-5563
United States v. Musick

*States v. White*, 503 F.3d 487 (6th Cir. 2007) (addressing "acquitted conduct" issue), *reh'g en banc granted, op. withdrawn*, 2007 WL 2890974 (6th Cir. Nov. 30, 2007); *United States v. Mendez*, 498 F.3d 423, 426 (6th Cir. 2007) (holding that a jury's verdict of acquittal "does not prevent the sentencing court from considering conduct underlying the acquitted charge").

The only aspect of the district court's sentence that appears problematic is the court's statement about the addition of the two-level enhancement for being convicted under § 1956 to the drug conviction offense level. That enhancement applies only to money-laundering convictions, not drug convictions. However, the court appears merely to have mis-spoken, because it ultimately arrived at the proper offense level based on its findings of fact regarding the amount of cocaine at issue, without consideration of § 1956.

**IV**

Having addressed all of appellant's arguments and finding none of them persuasive for the reasons articulated above, we AFFIRM appellant's conviction and sentence.