**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 20a0668n.06**

**No. 19-3830**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Nov 20, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JESUS INZUNZA-ARENAS, | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| Defendant-Appellant. | ) | OHIO |
| | ) | |

BEFORE:     BOGGS, DONALD, and THAPAR, Circuit Judges

BOGGS, Circuit Judge.   This appeal arises from an evidentiary ruling in the federal conviction of Jesus Inzunza-Arenas for distributing heroin in and around Columbus, Ohio.  The Government charged Inzunza-Arenas for participating in a conspiracy to possess with intent to distribute more than one kilogram of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), and 846.  On April 17, 2019, a jury convicted Inzunza-Arenas of the lesser charge of participating in a conspiracy to distribute heroin with only 100 to 1,000 grams attributable to him.

When Inzunza-Arenas was arrested, law-enforcement officers seized two phones, an LG and a Samsung.  The LG phone contained communications regarding drug transactions.  The Samsung phone contained pictures of Inzunza-Arenas, his motel room, and wire transfer receipts to his wife.  At issue are eight specific thumbnail images on the Samsung that depict various

baggies of a white powdery substance held in an unidentified hand. The court admitted the images over the defense's objection.

On appeal, Inzunza-Arenas argues the images are not relevant and that they are other-acts evidence that are inadmissible under Federal Rule of Evidence 404(b) or its background-evidence exception. Because the thumbnail images are relevant and any possible error in their admission would be harmless, we affirm Inzunza-Arenas's conviction.

## I. BACKGROUND

### A. Factual Background

In September 2018, investigators from the Department of Homeland Security received a tip from a confidential informant about a heroin-distribution conspiracy around Columbus. They were told that a woman, Gianella Luckett, was importing heroin from Mexico and a Hispanic man driving a silver Chevrolet Impala was distributing it. Special Agent Ryan Marvich located the vehicle and observed Jesus Inzunza-Arenas driving.

Agent Marvich trailed Inzunza-Arenas over the next five or six days and noticed conduct consistent with narcotics trafficking. The driver performed "heat runs," which are sporadic driving maneuvers—such as spontaneous U-turns or excessively slow driving—conducted to discover if any law-enforcement vehicles are following. Inzunza-Arenas also stopped in parking lots where individuals would get out of their vehicles and enter his car, stay only for thirty seconds to a minute before returning to their vehicles, and then drive away.

Agent Marvich coordinated with local law enforcement who stopped Inzunza-Arenas after a traffic violation on October 4, 2018. The officers searched the vehicle and found a Wendy's cup with a bag inside containing 23.89 grams of brown heroin and a digital scale in the center console. The police also seized additional plastic baggies and two cell phones, an LG and a Samsung.

After the stop, Agent Marvich conducted a recorded interview of Inzunza-Arenas through a translator. During this interview, Inzunza-Arenas admitted to selling heroin to "two or three clients," depositing the proceeds, and sending wire transfers with the funds.

The next day, police arrested Luckett and searched her apartment. They recovered 595 grams of heroin, a scale, and ziplock baggies.

### B. Judicial Proceedings

On October 23, 2018 a federal grand jury charged Inzunza-Arenas with conspiracy to possess over a kilogram of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), and 846. The time period of the stated conspiracy was from September 15 to October 5, 2018 and the charged coconspirators were Luckett and Kelly Rosas. Rosas was not part of Inzunza-Arenas's trial. Luckett pleaded guilty to a separate drug-distribution-conspiracy charge and cooperated with the Government during the trial. On April 17, 2019, a jury convicted Inzunza-Arenas of the lesser offense of participating in a conspiracy to distribute between 100 and 1,000 grams of heroin.

Luckett testified against Inzunza-Arenas. She explained that she would receive instructions to pick up and distribute heroin from a woman in Mexico named "Rosa" or "Señora." This contact directed her to pick up Inzunza-Arenas from the airport and get him situated. First, she got him a room in a Motel 6 and then a more permanent residence. Luckett also bought Inzunza-Arenas a car, a Chevrolet Impala, which was registered in her name even though she did not drive it.

Luckett testified that in early September she picked up two kilograms of heroin from a courier who flew in from Mexico. She said that Inzunza-Arenas was the only person she provided with heroin and that she gave it to him in 50-gram increments two-to-three times a week throughout

the charged time period (resulting in approximately 300 to 450 grams). She testified that the approximately 600 grams found by law enforcement in the apartment was the remainder of the two kilograms she had received from the courier and that it was destined for Inzunza-Arenas.

Agent Marvich discussed the investigatory process, including acting on a tip from a confidential source and trailing Inzunza-Arenas. He detailed the arrest and his subsequent interview of Inzunza-Arenas. The Government played the video recording of the interview for the jury. Agent Marvich also explained how he obtained a search warrant and downloaded items from each phone after the arrest.

The LG's subscriber information contained a fictitious address, but there were texts to a person named Ramiro, which is Inzunza-Arenas's middle name. There were also texts about quantities, addresses, and transaction prices—presumably of heroin, based on the price per gram. Some texts referred to receiving specific quantities from Gianella Luckett (there were references to Yanela and Gianella). Another text described the need to avoid the police before sending a wire transfer. The report contained 107 calls between the phone and contacts named "Peru" and "Peru2" over eleven days. Luckett testified that she spoke to Inzunza-Arenas about how she was born in Peru and that the call records seemed to accurately represent how often she spoke with him by phone.

The Samsung had no subscriber information but did have pictures of Inzunza-Arenas and of the Motel 6 room where he stayed—the picture of the room was taken on the day Luckett rented it. The phone also had photos of wire transfer receipts dated during the conspiracy period, some of which were addressed to the person who accompanied him when he crossed the border to the United States—Inzunza-Arenas suggested during his cross-examination of Agent Hicks that it was his wife in Mexico.

A computer forensic analyst described the extraction report pulled from the Samsung and said it contained pictures and over 4,400 thumbnail images. She explained that digital pictures on devices have corresponding thumbnail files found in the gallery application, and those thumbnails remain even if the original picture is deleted. Thumbnail images have no dates, times, or identifying information, and they lack data regarding whether they were taken by the phone's camera or received from another source. Eight of these images from the Samsung were images of a hand or hands holding a baggie with a white powdery substance. The analyst denied knowing who took the pictures, when they were taken, and what substance was depicted.

Inzunza-Arenas objected to the admission of the thumbnails on the ground that they lacked foundation and relevance.[1] The court considered and rejected the objections, stating that Inzunza-Arenas's concerns went to weight and not admissibility. It is this decision that we evaluate on appeal.

## II. ANALYSIS

### A. Standard of Review

We review evidentiary rulings for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). The decision to admit evidence is a matter of district court discretion and an appellate court "will not reverse . . . unless the ruling is manifestly erroneous." *Id.* at 141–42 (quoting *Cong. & Empire Spring Co. v. Edgar*, 99 U.S. 645, 658 (1879)). "An abuse of discretion occurs when a district court (1) relies on clearly erroneous factual findings, (2) improperly applies the law, or (3) uses an erroneous legal standard." *United States v. Paulus*, 894 F.3d 267, 279 (6th

---

[1] The thumbnail images were the subject of pretrial motions, but the court had held its decision in abeyance to allow the Government the opportunity to lay a proper foundation at trial. In its pretrial opinion and order, the court considered three plausible arguments for admitting the thumbnail images: as relevant evidence to a fact of consequence, as background evidence, and as other-acts evidence under Federal Rule of Evidence 404(b).

Cir. 2018). In this analysis, this court "must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *United States v. Dye*, 538 F. App'x 654, 663 (6th Cir. 2013) (quoting *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006)).

If there is an abuse of discretion, we will "reverse only if we are firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (quoting *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 187 (6th Cir. 2004); Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.")).

### B. Admissibility & Relevance

Any evidence is relevant that tends to make a fact of consequence in an action more or less probable than it would be without that evidence. Fed. R. Evid. 401. Relevant evidence is admissible unless otherwise excluded. Fed. R. Evid. 402. The standard for relevance determinations is "extremely liberal." *Dortch*, 588 F.3d at 400. "[T]he common objection that the inference for which the fact is offered 'does not necessarily follow' is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence could ever meet. A brick is not a wall." *Id.* at 401 (quoting Edward W. Cleary et al., *McCormick on Evidence* § 185, 542–43 (1978)). Evidence may not be excluded merely because it is insufficient to prove the ultimate point for which it is offered, so long as "it has the slightest probative worth." *Whittington*, 455 F.3d at 738–39 (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 475 (6th Cir. 1996)).

If evidence is relevant insofar as it only proves a defendant has a character trait and on a specific occasion he acted in accordance with that trait, it is normally inadmissible. Fed. R.

Evid. 404(b)(1). The threshold inquiry for "other acts" outside the crime charged is whether the act is probative of a material issue other than character. *Huddleston v. United States*, 485 U.S. 681, 686 (1988). Acceptable inferences include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

During Inzunza-Arenas's trial, the Government introduced eight thumbnail images with various depictions of a hand or hands holding baggies of a white powdery substance. These images are relevant because they make it slightly more probable that Inzunza-Arenas participated in a conspiracy to distribute heroin. The thumbnails corroborate Inzunza-Arenas's prior admission that he sold drugs to two or three people during that time period. It is not these thumbnail images *alone* that make it more likely that Inzunza-Arenas intended to participate in the conspiracy, but his possession of a phone with his selfies, photos of wire-transfer receipts to his wife during the charged conspiracy, *and* a white powder that resembles heroin. There is sufficient evidence to connect the phone and images to Inzunza-Arenas and the time frame of the charged conspiracy. The thumbnails are a brick in the wall.

Inzunza-Arenas's objections are related to the strength of the evidence, not whether the images are relevant. The lack of timestamp, difference in the substances' coloration, and absence of identifying information on the phone are reasons why it "does not necessarily follow" that Inzunza-Arenas participated in a heroin-distribution conspiracy. *See* Kenneth S. Broun et al., *McCormick on Evidence* § 185 (8th ed. 2020). The thumbnails may not be strong evidence—and Inzunza-Arenas had ample opportunity to show that on cross-examination—but their existence still makes it more likely that he is guilty than it would be without them.

The district court was correct in its ruling that there was sufficient foundation and that the images were relevant to Inzunza-Arenas's participation in the conspiracy. We find no error and no abuse of discretion.

## C. Harmless Error

Inzunza-Arenas also argues that the images are of other acts and only relevant insofar as they relate to a character trait, therefore they should not be admitted.[2] *See* Fed. R. Evid. 404(b). Yet even assuming the images are relevant for a prohibited reason, any error was harmless.

If a district court erroneously admits evidence, we only reverse if the error affected a defendant's substantial rights, meaning "the judgment was substantially swayed by the error."[3] *United States v. Clay*, 667 F.3d 689, 700 (6th Cir. 2012) (quoting *United States v. Murphy*, 241 F.3d 447, 453 (6th Cir. 2001)). Whether an outcome is "substantially swayed" in turn depends on whether the properly admitted evidence of guilt is overwhelming. *Ibid.* (quoting *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011)).

The evidence of Inzunza-Arenas's participation in the conspiracy is overwhelming, even without *any* evidence from the Samsung phone. He was found with heroin and a scale in his vehicle, he had texts regarding quantities, prices, and locations to pick up or sell drugs on the LG phone in his possession, an agent witnessed him conducting likely transactions, he admitted to selling heroin to two or three clients, and a coconspirator—who contacted him repeatedly, paid for

---

[2] Inzunza-Arenas correctly notes that *if* the images depict other acts they should not have been admitted under Rule 404(b). They similarly do not meet the requirements of the exception for background evidence because the acts depicted are not inextricably intertwined with the charged offense. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).

[3] Although Inzunza-Arenas did not cite Rule 404(b) at trial, we evaluate any error in admitting the evidence for harmless error because he objected to the images' relevance. *See United States v. Haywood*, 280 F.3d 715, 725 (6th Cir. 2002) (noting that objections for relevance preserve an argument regarding the relevance component of the Rule 404(b) admissibility analysis, specifically whether the evidence is probative of a material issue other than character).

his motel room, and owned the car he was stopped in—testified that she supplied him with narcotics.

The only possible way the images could have swayed the jury was in its quantity determination. The jury was presented with a choice between attributing to Inzunza-Arenas (a) less than 100 grams, (b) between 100 and 1,000 grams, and (c) 1,000 grams or more. The Government presented the following evidence of heroin quantity: the 23 grams seized from the car during Inzunza-Arenas's arrest; the 595 grams seized from Luckett's apartment; the remaining 1,405 grams that Luckett said she provided Inzunza-Arenas;[4] and the testimony that she provided Inzunza-Arenas with about 300 to 450 grams through 50-gram increments several times per week.

But the images on the Samsung phone are not linked to specific quantities, transactions, or the connection to Luckett. It is possible the jury found Luckett somewhat credible or partially credited her testimony. *See, e.g.*, *United States v. Musick*, 291 F. App'x 706, 716 (6th Cir. 2008) ("The jury could have concluded that the witnesses were not wholly credible as to the drug amount, but were somewhat credible, and partially credited their testimony accordingly." (citing *United States v. Jackson*, 473 F.3d 660, 669–70 (6th Cir. 2007)). The jury could have believed the amount seized from Luckett's apartment was for Inzunza-Arenas, but she exaggerated the total amount received, or it could have believed she was honest about the 50-gram transfers but not other parts of her testimony.

Inzunza-Arenas argues that the images were likely the "tipping factor" in the jury's decision of what quantity of heroin to attribute to him. *See United States v. Bell*, 516 F.3d 432, 448 (6th Cir. 2008). The "tipping factor" in *United States v. Bell*, was the introduction of "highly

---

[4] Luckett testified she obtained two kilograms of heroin and only provided it to Inzunza-Arenas. Because 595 grams remained, 1,405 grams would be the quantity provided to him before the arrest.

prejudicial" evidence of past convictions weighed against the remaining "weak evidence of possession presented." *Id.* at 447–48. Here, the thumbnails are weak circumstantial evidence in light of the remaining overwhelming evidence of guilt and had no relation to the amounts of heroin to be attributed to him.

The possibility that the lack of eight thumbnail images with limited probative value would have swayed the jury towards acquittal of Inzunza-Arenas, or a conviction of a lesser offense, is negligible at best. We are not convinced that admitting the images was an error, but even if so, it was a harmless one.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Inzunza-Arenas's conviction.

BERNICE BOUIE DONALD, Circuit Judge, concurring. I write separately to explain that I would find the district court abused its discretion in admitting the thumbnail images. I nonetheless concur because I agree with the majority that the error was harmless. Though the standard for relevancy is indeed "extremely liberal," *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009), the district court's broad standard for relevancy—"if it was found on the phone, I think it's relevant"—sweeps in more than the Federal Rules of Evidence allow.

The district court was correct by explaining before trial that the government failed to lay a proper foundation connecting Inzunza-Arenas to the phone. The government, however, made no further showing, yet at trial the district court reversed course and admitted the set of thumbnail images found on that phone. This was an abuse of discretion, as the government never connected the thumbnail photos with the crime alleged. First, the government never established whose hands are displayed in those thumbnails which displayed hands. A separate "selfie" of Inzunza-Arenas on the phone does not necessarily mean that a thumbnail image taken from that phone also displays his hands, particularly when the government cannot even establish whether the photos were taken on the phone or received from another phone, much less whose hands are in the photos. The district court should have required the government lay this foundation.

Second, while the photos may indeed display narcotics, the government conceded that it could not show or prove that the substance was heroin. Though the government expert testified that white powder heroin—possibly displayed in the photo—is a common form of heroin, the government charged Inzunza-Arenas with distributing *brown* heroin, the sole type of heroin later seized at Luckett's house. The government asserts that the white powder *could* be heroin (and the majority agrees, noting that the photos display a "white powder that resembles heroin"), but the government never explains away the discrepancy between the substance charged and the substance

photographed. The thumbnails just as likely display another drug, such as methamphetamine, which *Luckett* was charged with distributing.

The majority assert that "[t]he thumbnails corroborate Inzunza-Arenas's prior admission that he sold drugs to two or three people during that time period," i.e., the period alleged in the conspiracy. I disagree. The government's own witness conceded that there was no timestamp on the photos. How, then, might such thumbnails corroborate that Inzunza-Arenas did *anything* during the relevant time period, a mere three-week conspiracy? It is just as probable—given what we know about the thumbnails, which is very little—that the photos were taken a year prior to the alleged conspiracy in which case they would clearly be irrelevant to the crime charged.

The only apparent relevance of the thumbnails is to raise the presumption that Inzuza-Arenas, even if he did own the phone and take the photos, was "once a drug dealer, always a drug dealer." The Federal Rules of Evidence forbid such propensity evidence. *See* Fed. R. Evid. 401(b). The government did not show that the thumbnail images were in any way related to the conspiracy charged in the indictment apart from being unknown hands with an unknown substance. All the photos do is raise the inference that Inzunza-Arenas may have dealt *other* drugs at some unknown time (which itself requires an assumption that Inzunza-Arenas's hands were in the photo). I would accordingly find that the district court abused its discretion in admitting the thumbnail images without a further showing from the government.

With that said, I agree with the majority to the extent the majority would find any error harmless. The remaining evidence, as listed by the majority, points overwhelmingly toward Inzunza-Arenas's guilt. Further, the jury had other evidence from which it could have found Inzunza-Arenas guilty of the specific quantity of drugs alleged in the indictment. Accordingly, I conclude that introduction of the thumbnail photos was harmless error.